[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case is before the Court on Excelsior International Corporation's (hereinafter referred to as the "company") appeal from a decision and order of the Rhode Island Commission for Human Rights (hereinafter "Commission") issued on March 31, 1988 in favor of appellee, Susan A. Brooks, (hereinafter referred to as "Brooks") a former employee of the company. Jurisdiction is pursuant to Rhode Island General Laws, 1956 (1988 Reenactment) §42-35-15(g).
In September of 1985, Brooks applied for the position of Controller with the company whose Controller, at the time, Domenic Calicchia, was scheduled to leave that position in October of 1985. The president of the corporation, Lambert Cheng, had to travel overseas during these months so he requested that his Certified Public Accountant, Anthony Allegretti, conduct initial interviews of all applicants for the vacancy and arrange for the most qualified to meet with Mr. Calicchia. Mr. Calicchia was to make the final decision as to his replacement and was to train that individual. During the interviewing process, Mr. Allegretti noted Brooks' marital status, age, and whether or not she had children. The Commission found that no such inquiries were made of the male applicants. Both Mr. Allegretti and Mr. Calicchia agreed that Brooks was the best qualified candidate and should be offered the position. She accepted the position at a starting salary of $18,000 per year and agreed to begin work on Wednesday, September 25, 1985. (She subsequently was granted a request to commence work the following Monday, September 30, 1985).
During the course of Brooks' first week on the job, Mr. Calicchia questioned her method of drafting checks, her reconciliation of the bank statement, and her handling of the general ledger. Although Mr. Calicchia appeared to be complimenting her on her efforts, he was simultaneously indicating to the president, Mr. Cheng, that she would not work out and should be replaced. Mr. Cheng recommended that she be given the balance of the week to improve. It was decided that if improvement was not evident, and Mr. Calicchia retained his opinion that Brooks would not work out, then Mr. Cotta, another applicant who was favored out of the nine applicants (six women and three men) interviewed, would be considered for the position.
Mr. Cheng accepted Mr. Calicchia's evaluation and recommendation to terminate Brooks on Friday, October 4, 1985. On the following Sunday, Mr. Calicchia informed her that the company was going to give someone else a try in the job and that she would be contacted the following Friday and informed of the company's decision. Brooks called Mr. Allegretti on Tuesday, October 8, 1985 to ask why such action had taken place. Mr. Allegretti, in an attempt to assuage the self-doubt Brooks was expressing responded that Mr. Cheng "probably prefers . . . a man over a woman." (Tr. 43) In fact, Mr. Cheng never made such a statement to Mr. Allegretti. (Tr. 43). On Friday October 11, 1985, Mr. Calicchia telephoned Brooks to inform her of the company's decision to retain Mr. Cotta. Mr. Cotta assumed the position of controller but left the company after several months due to the unacceptable nature of his work. Subsequently, Mr. Calicchia returned to the company as Controller.
On November 7, 1985, Brooks filed a charge against the company alleging that she was discriminated against with respect to the terms and conditions of employment and was terminated because of her sex in violation of R.I.G.L. 1956 (1988 Reenactment) § 28-5-7. (See Appendix). The charge was investigated by the Commission on January 24, 1986 at which time the Commission made a determination that probable cause existed to support the charge. On September 9, 1986, the Commission issued a complaint and notice of hearing.
In its decision, after the hearing (conducted on August 18 and 19, 1987), the Commission concluded that the employer discriminated against the employee "with respect to terms and conditions of employment and termination because of her sex." Essentially the Commission found a violation of R.I.G.L. § 28-5-7
and ordered the employer to cease and desist from all unlawful employment practices, offer the employee the next available position at the corporation as Controller, reimburse her for lost salary and other economic losses such as medical and any pension benefits together with interest thereon, and attorney fees. The employer was also required to submit quarterly itemized payroll vouchers to the Commission until the employee was either rehired or declined such an offer.
This Court's jurisdiction to review a decision of the Commission is established in R.I.G.L. 1956 (1988 Reenactment) §42-35-15(g) which provides in pertinent part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In its review of the whole record, this Court must defer to the Commission's decision unless such decision is "clearly erroneous." Guarmo v. Department of Social Welfare,410 A.2d 425, 428 (R.I. 1980).
Because the Rhode Island Fair Employment Practices Act (See Appendix) is nearly identical to Title VII of the Federal Act (42 U.S.C. § 2000e — 5(g) (1982)), the Rhode Island Supreme Court has applied the federal framework developed in Title VII cases to actions brought under the Rhode Island Act. Newport Shipyard,Inc. v. Rhode Island Comm'n For Human Rights, 484 A.2d 893, 897-98 (R.I. 1984); Marley v. United Parcel Service, Inc., 665 F. Supp. 119, 128 (D.R.I. 1987). Thus, in reviewing the Commission's decision this Court must look to the legal standards set forth in the federal cases construing Title VII to evaluate this appeal.
There are two types of Title VII cases: disparate impact cases and disparate treatment cases. Disparate impact cases involve a challenge to a facially neutral employment practice that adversely and disproportionately affects employees of a protected class. Griggs v. Duke Power Co., 401 U.S. 424, 529-30, 91 S.Ct. 849, 853 (1971). A disparate treatment case generally involves allegations that an employer has discriminated against an employee of a protected class with respect to a term, condition or privilege of employment. McDonnell Douglas Corp. v.Green, 411 U.S. 792, 796, 93 S.Ct. 1817, 1821 (1973). The case presented to this Court involves the latter.
The well-respected McDonnell Douglas decision sets forth the necessary test and burden of proof which must be satisfied in a discriminatory treatment case. First, the employee has the burden of proving by a preponderance of the evidence a prima facie case of discrimination in a disparate treatment case.McDonnell Douglas at 802. In order to establish a prima facie case involving allegations of sex discrimination, employee Brooks must prove that: (1) she was a member of a protected class; (2) she was qualified for the position she held; (3) despite her qualifications the defendant terminated her employment; and (4) after her termination the defendant either left the position vacant or filled it with a man. Id. see also Marley v. UnitedParcel Service, Inc. at 128, 129. Second, if she succeeds in proving a prima facie case, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas at 802. Third, if the employer successfully rebuts the presumption, "the [employee] must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not true reasons, but were a pretext for discrimination." Id. quoted from Texas Dept. of CommunityAffairs v. Burdine, 450 U.S. 248, 253 (1981). Moreover, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. The defendant employer need not persuade the Court that it was actually motivated by proffered reasons, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine at 255.
The Commission utilized the criteria enumerated in theMcDonnell Douglas and the Burdine cases when ruling that Susan A. Brooks presented sufficient evidence to prove a prima facie case of sex discrimination. Applying the facts to the criteria, the Commission found that
 1. she was in a protected class;
 2. she was qualified for the job and met the basic requirements of the job, i.e., the employer accepted her work without express reservation;
 3. she was terminated; and
 4. a person not in the protected class was retained.
In applying the second step of the McDonnell Douglas/Burdine
analysis, the Commission stated that once an employer has articulated a legitimate non-discriminatory reason for its actions, the employee may then prove discrimination by showing that the employer's stated reason(s) is a pretext for discrimination. The employee establishes this pretext by directly persuading the Commission that a discriminatory reason(s) more likely motivated the employer's actions or by indirectly showing that the employer's proffered explanation is not credible. Here the Commission found the latter.
The Commission found that Brooks proved that Mr. Calicchia's stated reasons for termination were not credible. In its assessment of Mr. Calicchia's testimony, the Commission made specific findings of inconsistencies and contradictions. (Decision at 6, 7). Although Mr. Calicchia was complimenting the defendant's work, he was simultaneously urging Mr. Cheng to agree to her termination. Id. Mr. Calicchia viewed Brooks' attempts to learn the business negatively as an "attitude problem", while viewing the same attempts by her replacement, Mr. Cotta, positively, as "initiative". Id., at p. 7.
The employer's position is that the Commission erred by overlooking reliable, probative, and substantial evidence and thus abused its discretion. The employer specifically alleges that the Commission; (1) erroneously upheld an objection to the introduction of evidence pertaining to the employer's family background; (2) ignored the fact that Mr. Calicchia convinced the defendant to accept the position; (3) overlooked the fact that the defendant was late for the interview and changed the starting day of employment; and (4) overlooked the fact that errors were found within her work product. However, the Commission did have evidence before it of discriminatory treatment with respect to the conditions of the employee's termination. The Commission thoroughly evaluated the evidence and made specific findings concerning the credibility of the witnesses. The Commission is regarded as having special expertise in the area of discrimination in employment and thus, this Court may not weigh the evidence or substitute its judgment for that of the Commission on questions of fact. Carmody v. R.I. Conflict ofInterest Commission, 509 A.2d 453 (R.I. 1986). If there is legally competent evidence in the record to support the Commission's findings this Court may not reverse the decision.Sartor v. Coastal Resources Management Council, 542 A.2d 1077, 1083 (R.I. 1988). Therefore, this Court must uphold the Commission's finding that Susan A. Brooks was discriminated against because of her sex with respect to the terms and conditions of her termination.
After its review of the whole record, this Court finds that the decision of the Rhode Island Human Rights Commission determining that Susan A. Brooks was discriminated against because of her sex with respect to the terms and conditions of termination was supported by reliable, probative, and substantial evidence and was not clearly erroneous. For the reasons hereinabove set out, the decision of the Commission is hereby affirmed.