[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is properly before this Court on the appeal of Mary LaFazia and Frank LaFazia from the February 10, 1993 decision of the Coastal Resources Management Council (CRMC) denying their "as is" petition to obtain permission by way of exception or variance from that regulatory agency relative to work the LaFazias caused to be done to their shoreline property in Warwick, Rhode Island.
Sometime in 1991 Frank and Mary LaFazia filed a Maintenance Certification Request with the CRMC seeking approval to repair a concrete retaining wall and to dump riprap between the wall and the shoreline to combat problems of erosion; and on October 18, 1991, in a letter from Grover J. Fugate to Frank LaFazia, the Council granted permission. This October 18, 1991 correspondence was denominated "CRMC Maintenance Certification M91-10-12. . ." and it expressly authorized the LaFazias "to repair seawall by replacement of riprap to face of wall, fill voids the toe of wall, patch concrete. . . ." Among the conditions included in the letter was the following: "Plans for any future alteration of the shoreline or construction or alteration within the 200' zone of CRMC jurisdiction or in coastal waters must be submitted for review to the CRMC prior to commencing such activity."
Before the LaFazias began any work pursuant to the October 18, 1991 Maintenance Certification, their property was buffeted by a tropical storm which caused them to conclude that work in addition to that authorized on October 18, 1991 would be necessary. Motivated by this belief, the LaFazia's agent and contractor, William A. Villella, spoke by telephone about the new damage with an official of the CRMC, one Gregory Baribeault, and herein lies the problem that gives rise to this controversy.
The LaFazias contend that Mr. Baribeault gave Mr. Villella oral permission to significantly deviate from the strictures of the Maintenance Certification; and the LaFazias also assert that appropriate and necessary permission for work in excess of that allowed by the Maintenance Certification was also granted by Warwick officials. The CRMC disputes this.
In any event, the LaFazias, through the efforts of William A. Villella, proceeded to deal with their shoreline property as they saw fit. As the CRMC did not view the matter in the same fashion as did the LaFazias, a Cease and Desist Order was issued on November 12, 1991. On or about May 1, 1992, Frank LaFazia applied to the CRMC for approval for the work he had caused to take place at the subject property, and on October 27, 1992 the CRMC conducted a hearing on the matter at which the LaFazias were represented by an attorney. The stenographic record of this proceeding is in the Superior Court file.
In preparation for the hearing the CRMC had directed staff members to file reports, and these reports prepared by a biologist and an engineer are in the record on appeal. Page 4/4 of "Category `B' engineer's report" defines the issue from the point of view of the CRMC and contains a narrative relative to the work performed by the LaFazias in contravention of the original permission granted, none of which was contradicted by competent evidence at the hearing:
 A Maintenance Assent was issued to repair a deteriorating seawall in October 1991. The original wall was to be repaired by filling the voids and patching the concrete, then replacing the riprap on the seaward face. Instead the existing wall was buried under a large volume of crushed gravel and armor stone that raised the elevation of the top of the wall by 3.5 feet and extended the toe of the wall seaward by an estimated 17 feet to the east and 12 feet to the south. Because of the extreme disparity between the proposal and the completed project, the Maintenance Assent was declared null and void and a Cease and Desist Order was issued on November 12, 1991.
 Local approval has not been obtained for the as-built project. The City of Warwick submitted a Letter of Objection to this application. The Warwick Harbor Commission found that the construction constituted an encroachment onto a highly utilized city right-of-way and was in direct conflict with the Harbor Management Plan and the City of Warwick Comprehensive Plan. The commission has ordered restoration of the area to the original condition or to a condition equal to `in kind' replacement of the existing seawall. The engineering staff is in complete accordance with the City of Warwick that the revetment should be removed. . . .
Essentially, the claim of the LaFazias is that the CRMC is barred by the doctrine of equitable estoppel from ordering the removal of the riprap and the revetment because the LaFazias undertook their project on reliance of a verbal authorization by an official of the CRMC.
In appeals such as this, the discretion of the reviewing justice is carefully circumscribed by both the controlling statute, R.I.G.L. § 42-35-15. and decisions of the Rhode Island Supreme Court. The criteria to be employed in reviewing the decision of the administrative body is the "some" or "any" evidence test. Sartor v. Coastal Resources Management Council,542 A.2d 1077, 1082-83 (R.I. 1988).
In stating the standard it observes for the review of decisions rendered by administrative tribunals, the Supreme Court declared:
 We have consistently held that we shall reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record. Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981).
Elsewhere, the Supreme Court has stated:
. . . our inquiry is limited to determining whether the record reflects evidence, or reasonable inferences that may be drawn therefrom, to support findings of the tribunal whose decision is being reviewed. Guarino v. Department of Social Welfare, 122 R.I. 583, 588-589 (1980).
In short, if there is competent evidence to support the decision of the Coastal Resources Management Council, its decision must stand.
In reviewing the transcript of the October 27, 1992 hearing, there is no evidence whatsoever to support any contention by the LaFazias that the work ultimately done at their instance by Mr. Villella was within the original permission granted by the CRMC; and indeed, the LaFazias do not dispute that the work carried out around the wall and on the beach between the wall and the shoreline was well in excess of that authorized in the Maintenance Certification. Mr. Villella himself conceded that ". . . we put too much riprap, we put riprap over the wall and it wasn't part of the maintenance agreement. I admit that. . . ." (Tr. 104)
Moreover, the deviation from the original Maintenance Certification was anything but de minimis, as the LaFazias caused "somewhere around four to six hundred tons" of unauthorized riprap to be spread in the environs of the wall and beach. (Tr. 104-105).
Thus, the only claim on which the LaFazias could hope to prevail in this appeal is their assertion that they acted in a good faith reliance upon a verbal authorization by an official of the CRMC to do the work in the manner they did it. The official who the LaFazias allege gave the permission is Gregory Baribeault, but he denied giving any such permission or making any declarations that could be construed as permission for the work ultimately performed: "I certainly know my limits of authority and I would never insinuate that we would grant a verbal okay on anything." (Tr. 83)
Mr. Baribeault elaborated: "I mean, I was never notified that this riprap was being replaced on the job." (Tr. 83-84)
And again, Mr. Baribeault emphasized: "At no time was I ever informed that they were bringing riprap in and dumping it over the edge of this wall." (Tr. 84)
On the issue of oral permission, the LaFazias presented their contractor, William A. Villella. Mr. Villella conceded that he could have been mistaken as to any grant of permission to proceed as he did. Mr. Villella testified as to what he believed was a mutual mistake: "If he [Baribeault] misunderstood me, I can accept that . . ." (Tr. 90)
And a few moments later in the proceedings, Mr. Villella declared: "If Mr. Baribeault misunderstood me or I misunderstood him, I mean, what did I call him for. . . ." (Tr. 90)
The Supreme Court of Rhode Island has instructed that the application of the doctrine of equitable estoppel to governmental agencies is "extraordinary and will not be applied unless the equities clearly must be balanced in favor of the parties seeking relief under this doctrine." Greenwich Bay Yacht Basin Assoc. v.Brown, 537 A.2d 988, 991 (R.I. 1988). In the case before this Court, the CRMC could easily have found on the record before it that no permission of a type that would lead a reasonable person to believe that he or she had been authorized to dump 400 to 600 tons of riprap on a beach had been granted. Mr. Baribeault's denial that he gave oral permission could by and of itself suffice to justify the CRMC ruling as it did. The admission by Mr. Villella, on behalf of the LaFazias, that the entire matter respecting work not originally authorized in the Maintenance Certification could have been the result of a mutual misunderstanding further supports the CRMC decision. And lastly, the Court emphasizes that there was no mere de minimis
deviation from the original permission, but rather a substantial and qualitatively different project involving 400 to 600 tons of previously unacknowledged riprap was undertaken, which resulted in the changed topography of the shoreline and the obstruction. If not elimination, of a public right-of-way.
For the foregoing reasons, it is the decision of this Court that the record contains more than ample evidence supporting the findings of fact and ultimate conclusions of the CRMC. The appeal, of Mary and Frank LaFazia is denied; the February 10, 1993 decision of the Coastal Resources Management Council is affirmed; and judgment may enter accordingly.