DECISION
In this matter, Anita Breault appeals the May 11, 1993 Administrative Hearing Decision of the Department of Human Services denying her application for a continuation of her General Public Assistance (GPA) benefits. On February 9, 1993 the Department of Human Services notified Ms. Breault in writing that her benefits would be discontinued effective March 1, 1993. The notice provided, in part:
 The reason for this action is: you've exhausted your six (6) month Category One benefits. You've been denied Category Two benefits. No objective medical evidence to support disability claim. You may reapply for Category Two benefits, but must submit evaluation from Dr. Epstein. [sic]
Ms. Breault claimed an appeal upon being notified of the proposed termination of her benefits and a hearing was conducted on March 11, 1993, with Ms. Breault representing herself. The hearing officer rendered her decision on May 11, 1993, and it is from this decision that Anita Breault appeals pursuant to R.I.G.L. 42-35-15.
In her Complaint bringing the matter into this Court, the Plaintiff recites the litany of grounds for possible reversal set forward in R.I.G.L. 42-35-15(g), and focuses on what she contends to be inadequate notice given her by the department and a failure on the part of the department to render a decision with "adequate findings and conclusions. . ."
A Superior Court Justice reviewing the appeal of an agency decision exercises a very circumscribed discretion. The statute itself mandates this:
 The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. R.I.G.L. 42-35-15(g).
The Rhode Island Supreme Court has clearly stated that this means the agency decision must be sustained if there is some legally competent evidence on the record developed below to support it. See e.g., Environmental Scientific Corp. v. Durfee,621 A.2d 200 (R.I. 1993); Guarino v. Department of Social Welfare,122 R.I. 583, 410 A.2d 425 (1980).
A review of the record in this case indicates that Ms. Breault was denied her application for a continuation of benefits because she failed to provide medical information requested of her on at least two occasions; it further appears that no due process interests of Ms. Breault, as secured to her by the Fourteenth Amendment to the United States Constitution and Article 1, Section 2 of the Rhode Island Constitution were denied her as the agency undertook the examination of her claim.
The Notice of Agency sent to Ms. Breault on February 9, 1993 advised her, among other things, "No objective medical evidence to support disability claim." This declaration standing alone could not satisfy the requirements of Goldberg v. Kelly,397 U.S. 266, 267-268 (1970) and Avanzo v. R.I. Dept. of HumanServices, 625 A.2d 208, 210-211 (R.I. 1993), that notice in such matters be specific and individualized. See also, R.I.G.L.40-6-13, and the compiler's note appended thereto, declaring that when contemplating termination, "The Department . . . shall notify said recipient of the individualized reasons and specific grounds for the Department's finding of ineligibility and/or reduction in benefits under the applicable statute . . ." Sec. 5 of PL. 1993, ch. 138, art. 25.
In this case, however, the Department supplemented this general declaration regarding the absence of evidence by specifically advising Ms. Breault that she "must submit evaluation from Dr. Epstein [sic]."
The record reveals that Mel Epstein, M.D., had performed surgery on Ms. Breault; and it was hardly unreasonable on the part of agency employees entrusted with the review of Ms. Breault's eligibility to request an updated report from Dr. Epstein on Ms. Breault's physical condition. No such report was ever presented, nor did Ms. Breault seek to produce a report from another surgeon appropriately qualified to comment on her condition.
The absence of a report from Dr. Epstein was an issue at the March 11, 1993 hearing and Ms. Breault indicated her awareness of this problem. She specifically spoke to the issue at at least two points during the hearing:
 Doc — Dr. Epstein I called many times. I, uh, he's very, he's a neurosurgeon. He's very very tough to get into, but I will bring the papers by hand to his physician's assistant and I would like to request from both or one of the doctors, uh, an MRI or CAT Scan of the lower back, because its completely worn out . . . (TR. 3)
 * * *
 And Dr. Epstein, again, is a surgeon before I had my surgery, he was too busy to speak to me before my operation. . . . This particular physician is so busy, I mean, people just really don't understand. I can get a hold of him, though. I'm, I'm very sure I can, uh, sit with him. (TR. 7)
In her May 11, 1993 decision, the hearing officer concluded, among other things, that the Office of Medical Review (OMR), the agency representatives responsible for the initial determination of ineligibility, "could not establish a determination of permanent and total disability based on the evidence submitted," and that the "OMR requested that information [Dr. Epstein's evaluation] and it was not provided."
The hearing officer also noted that the report of the Petitioner's Primary Care Physician did not contain a diagnosis in the space provided on the official form, and the record in this matter clearly supports this observation. It is certainly not the role of the hearing officer to speculate from other entries in the medical report as to what the actual specific diagnosis is; and clearly, this Court has neither the skill nor the authority to make such a judgment.
Despite several reasonable requests to do so, Ms. Breault failed to provide the information requested, either by way of Dr. Epstein or some similarly qualified individual. Moreover, Ms. Breault at no time contended that the request was unreasonable or that she was physically or otherwise incapable of complying with the request.
The appeal is denied and the decision of the Department of Human Services is sustained. Counsel for the Respondent department shall submit an Order in conformity with this decision.