DECISION
This matter is before the court on the appeal of Linda Lucier (plaintiff) from a decision of the R.I. Department of Human Services (DHS) denying her application for benefits through the Pathways to Independence Program (Pathways). Plaintiff also seeks a declaration that the agency rule at issue is invalid as applied to certain persons with disabilities. Jurisdiction is pursuant to G.L. 1956 (1993 Reenactment) §§ 42-35-15 and 42-35-7.
Facts and Case Travel
The plaintiff, a student attending the University of Rhode Island (URI), was receiving benefits through Aid to Families with Dependent Children (AFDC) at the time of this action. On September 14, 1994, the plaintiff met with a Pathways representative to request that Pathways authorize supportive services, specifically child care and transportation, relative to her attendance at URI.
After reviewing her application on September 15, 1994, DHS determined that plaintiff was not eligible for supportive services because she was not participating in a Pathways-approved educational program. The plaintiff appealed this decision and a hearing was held on November 22, 1994, before DHS Appeals Officer Alan Lemery.
At the hearing, the plaintiff testified that she suffered from chronic fatigue immune dysfunction syndrome (Tr. at 2) which prevents her "from being able to maintain a full-time schedule." (Tr. at 3.) She offered a letter from Dr. Michael Rosenberg dated September 6, 1994, which states in its one-paragraph entirety:
 Because of Mrs. Lucier's medical condition, I strongly recommend that she go to school part-time. I feel that full time studies would be detrimental to her health. Anything that you could do to support Ms. Lucier would be greatly appreciated. (Tr. at 7.)
Also at the hearing, Deborah Bacur, a representative of the Pathways program testified that the plaintiffs "plan was to go to URI on a part-time basis and take two courses and then she did propose that the remainder of her 20-hour plan could be spent teaching her children at home. (sic) We did discuss that in the office with Donalda Marcello and that request was denied." (Tr. at 12.)
Jill Tyler, another Pathways employee, testified that "the policy clearly states that in order for us to sign up ETAP, (sic) or Employment Training, Education, Training and Employment Plan (sic) with someone, they have to be in 20 hours of a component activity and the plan that Ms. Lucier wanted to engage in is less than 20 hours." (Tr. at 11.) Tyler additionally testified regarding the requirements of the program:
 We need her to be taking enough credits to finish within three years, and also to have 20 hours documented at the college that she's doing. So we would count the six credits of six hours (sic) and we would need to document 14 other hours of activity and she didn't present anything to fill up that 14 other hours. (Tr. at 11.)
Further, Tyler offered the following with regards to additional services available to the plaintiff through the Pathways program:
 Pathways service, it's not just the money payment for child care and transportation and clothing. (sic) It's also the case management. So she's still eligible to talk with the case manager about other sources of help and other ways to reach her goal. So, she's still, as a recipient of AFDC, is eligible for Pathways services but the second step of getting us to pay for those things, you do have to agree on a plan. But we can still talk with her about where she can go for help if we are not able to provide it directly. (sic) (Tr. at 14.)
At the administrative hearing, Henry Shelton, acting as an advisor to Ms. Lucier, questioned both Ms. Tyler and Ms. Bacur regarding accommodations offered to the plaintiff by the Pathways representatives:
Henry Shelton: Do either of you ask the director, because of the physical
 condition, to make an exception to the rules, so that she
 could, say, study at her home or in her case, she said
 teach her children, but so that the 20 hours could be done,
 not all at school. Did either of you ask the director (sic)
Jill Tyler: I'm not sure if I asked for an exception. We did ask about
 the (sic)
Shelton: the health problems. (sic)
Tyler: but about the home schooling, but I'm not sure. (sic)
Shelton: What about the health problem itself? Preventing her from
 spending the 20 hours in school?
Tyler: See, the situation has come up that (sic)
Alan Lemery: All right, did did you ask (sic)
Tyler: Yes.
Lemery: ______________________ (sic)
Tyler: No, I don't think so, no.
Lemery: Okay. Okay, anyone have anything else? Okay, if there's
 nothing further, then this hearing is adjourned. (Tr. at
 15-16.)

A decision was rendered by the Appeals Officer on January 1, 1995. (See, DHS Decision dated January 1, 1995.) The hearing officer found, as a matter of fact, that the plaintiff was an AFDC recipient; that she was enrolled in two three-credit courses at URI; that she suffered from Chronic Fatigue Immune Dysfunction Syndrome; and that she had received notice regarding the details of the denial of support service benefits. (Decision, at 2.) The hearing officer also found that the Plaintiff was ineligible for support services through Pathways because she had not met the minimum requirements for the development of an Education, Training and Employment Plan (ETEP); she was therefore not enrolled in an approved ETEP as required as a prerequisite for support services. The hearing officer cited DHS regulations on which he based his decision to affirm the denial of such benefits.
From this decision, the Plaintiff filed a timely appeal.
Standard of Review
The scope of this court's review of decisions of administrative agencies, including decisions of the Department of Human Services, is defined by R.I. Gen. Laws 1956, § 42-35-15 as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.
Pursuant to § 42-35-15, a reviewing court cannot substitute its judgment for that of the agency in regard to the credibility of the witnesses or the weight of the evidence concerning questions of fact. Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988). An administrative decision will be reversed only if it is clearly erroneous in light of the reliable, probative and substantial evidence contained in the record. Id. If there is competent evidentiary support for the agency's determination, the determination will not be disturbed.Guarino v. Department of Social Welfare, 122 R.I. 583,410 A.2d 425 (1980).
DHS Regulations
The Pathways to Independence Program is the program through which Rhode Island has chosen to administer the Job Opportunities and Basic Skills Training (JOBS) program, a project established by Congress as part of the Family Support Act of 1988, designed to assist persons receiving AFDC to become employable and to obtain jobs. (DHS Manual 210.05.) The Pathways program is specifically designed as a focal point of the DHS, to provide employment and training services to its clients. (DHS Manual 551.10.)
As a condition of eligibility for AFDC, all persons for whom assistance is requested and all persons who are receiving assistance, unless exempt by law, and for whom the Pathways to Independence has guaranteed provision of child care, are required to participate in education, training or employment services with the Pathways to Independence Program. (DHS Manual 210.10.) Because the plaintiff has requested child care and has been denied such services, she clearly is not required to participate in the Pathways education, training or employment services, although she may participate as a "volunteer," as the rule allows. Id.
Through the Pathways program, a planned schedule of employment and/or education, the Education, Training and Employment Plan, (ETEP), is developed jointly by the Pathways worker and the client, after a skills assessment and a determination of the client's short and long term goals. (DHS Manual 551.30.) In order for an ETEP to be approved, the client must schedule a total of at least 20 (twenty) hours of educational or work related components per week. Id. "The Pathways/JOBS program encourages all participants, including those who are disabled, to participate in education and training programs." (DHS Manual 553.05.)
In appropriate cases, participants may enroll in post secondary courses leading to an associate's or bachelor's degree, upon Pathways' approval that such coursework will be directly related to the employment goal defined by the individual's ETEP. (DHS Manual 553.05.10, Post-Secondary Education.) For preliminary ETEP approval, the client must fulfill the following criteria:
 4) The participant must attend post-secondary at six or more credit hours (half time) and must meet the 20-hour-week ETEP requirement under Sec. 551.30.
 5) For any post-secondary education plan, participation is limited to no more than 24 full-time months in a three-year period from the beginning of a post-secondary education plan, or twelve months added to the number of semesters (one semester is defined as 4.5 months) needed to complete the degree (for individuals who have at least one semester's credit, minimum of six credits toward the degree), whichever is shorter; supportive services are limited to 24 full-time months or its equivalent. Id.
The plaintiff herself offered testimony that she did not meet the minimum criteria for an approved ETEP through the Pathways program, noting: "I was denied because at this point I cannot do 20 hours per week on campus," (Tr. at 2); "Chronic Fatigue Syndrome prevents me from being able to maintain a full-time schedule at this time," (Tr. at 3); "I was denied because I wasn't able to do 20 hours," (Tr. at 5); "[M]y basic contention is that I am unable to spend 20 hours on campus because of the Chronic Fatigue Syndrome." (Tr. at 13.) Without such approval, she is not eligible for the support services of child care and transportation. (DHS Manual 553.05.10; 551.30.) Plaintiff maintains, however, that her inability to satisfy such criteria is a result of a disability, Chronic Fatigue Syndrome, (CFS), and that the Pathways program may not require her to meet the statutory requirements because of this disability.
Section 504 and the ADA
Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 795
("Section 504"), prohibits discrimination by entities receiving federal funds:
 No otherwise qualified handicapped individual . . . shall, solely by reason of such handicap, be excluded from participation in, denied benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance. (Id.)
Section 504 seeks to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance. Alexander v.Choate, 467 U.S. 287 [469 U.S. 287] (1984), (citing SoutheasternCommunity College v. Davis, 442 U.S. 397 (1979)). Reasonable accommodations must be made to allow an otherwise qualified applicant the opportunity to participate. Alexander, at 300. Federal grantees need not make "fundamental" or "substantial" modifications to accommodate the applicant, just reasonable ones. Id.
Like § 504, the Americans with Disabilities Act, 42 U.S.C. § 12101et seq, (ADA), also contains specific anti-discrimination provisions. In this instance, a state agency may not deny a qualified individual with a disability the opportunity to participate in, or benefit from, a benefit or service, or provide a service that is not as effective in affording equal opportunity to reach the same level of achievement. The agency must make reasonable modifications in policies, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless it can demonstrate that making the modification would fundamentally alter the nature of the program or activity. 42 C.F.R. § 35.130(b)(1)(i)-(iii); (b)(7).
The purpose of the ADA is to ensure that those with disabilities are not disadvantaged. D'Amico v. New York StateBoard of Law Examiners, 813 F. Supp. 217, 221 (W.D.N.Y. 1993). "The ADA was not meant to give the disabled an advantage over other applicants." Id. The act was meant to place them on equal footing. Id. In D'Amico, the Board of Law Examiners resisted the extensive accommodations requested of an applicant who had a severe visual impediment. The court recognized the Board's desire to maintain the integrity of the bar exam process, but the examine had no alternative avenue to a license to practice law except via the bar exam. The Board was ordered to make accommodations which allowed the applicant to sit for the exam.Id. at 223.
The plaintiff here asserts that her disability obligates the Pathways program to accommodate her by waiving the requirement of 20 hours per week of education and employment components for ETEP approval. Unlike the plaintiff in D'Amico, however, the plaintiff here has other avenues to achieve the desired result. The services requested are available elsewhere within the DHS. The Department of Human Services oversees the Office of Rehabilitative Services, which policy statement reads, "The Office of Rehabilitative Services ensures that required services are available which are appropriate to the vocational rehabilitative needs of each eligible individual." (DHS Manual 115.6.) An individual is eligible for services if the individual has a disability and requires vocational rehabilitation services to prepare for, enter, engage in or retain gainful employment. (DHS Manual 115.2.(II)(B)(a) and (b)).
The plaintiff next alleges that the DHS rule requiring a minimum participation of twenty hours per week for benefits eligibility violates Article 1, § 2 of the R.I. Constitution, specifically the equal protection guarantees. The very nature of the equal protection clause is to mandate that all persons, similarly situated, be treated equally. Further, regulations dealing with economic or social matters are to be evaluated under a rational basis test. Felice v. R.I. Bd. of Elections,781 F. Supp. 100 (D.R.I. 1991). Unless the regulation totally lacks a rational relationship to a constitutionally permissible purpose, the regulation may stand. Id.; cf. Metropolitan Property andCas. Ins. Co. v. Rhode Island Insurance Insolvency Fund,811 F. Supp. 54 (D.R.I. 1993). The Pathways program provides benefits to AFDC recipients in an attempt to promote self-sufficiency through education and employment. Support services are available to those recipients who are within three years of graduation or able to devote twenty hours weekly towards such independence. Accordingly, the regulation satisfies the rational basis test.
The DHS program at issue also allows nearly infinite flexibility in terms of accommodation to participants, as long as the one essential core requirement is satisfied, that being the twenty hour weekly commitment. The record indicates that the Pathways staff made efforts to carefully tailor a program appropriate to the employment and educational desires of the plaintiff, without success. The plaintiff received equal treatment under the administration of the DHS rule which requires twenty hours; she was denied Pathways benefits for a failure to satisfy the essential criteria.
While the plaintiff maintains that "she should not be shunted off into separate, inferior programs, simply because she has a disability," (Plaintiffs memorandum, at 11), there is no evidence that service through the ORS, set up specifically as the DHS office to address the needs of such individuals, is inferior or inappropriate. The Department of Human Services also oversees the Office of Rehabilitative Services, the very purpose of which is to provide services to individuals with disabilities. Section 504 does not require all handicapped persons to be provided with identical benefits, just the opportunity to participate in federal benefit programs. Traynor v. Turnage, 485 U.S. 535, 549 (1987). A review of the record indicates that Ms. Lucier has been afforded equal treatment and equal protection.
Further, the plaintiff alleges that the denial of benefits violates her rights of due process. The protections of due process are not triggered unless it can be shown that there has been a deprivation of a protectable liberty or property interest.Fireside Nissan, Inc. v. Fanning, 30 F.3d 206 (1st Cir. 1994). In this instance, a legitimate claim of entitlement must be asserted as a prerequisite to invoking such protection. Strang v. Marsh,602 F. Supp. 1565 (D.R.I. 1985). Plaintiffs assertion that she is entitled to benefits by right through the Pathways program ignores the fact that she has never received such benefits nor does she satisfy the requirements for eligibility. No allegation has been asserted to warrant any further analysis regarding deprivation of a protected interest. Accordingly, the decision of the agency has afforded the plaintiff due process.
The plaintiff finally claims that the DHS rule itself is unconstitutional in discriminating against persons with disabilities and asks this court for a declaratory judgment pursuant to G.L. 1956 (1993 Reenactment) § 42-35-7 in that regard. The ADA and § 504 require reasonable accommodations, not fundamental changes, to policies and procedures so as to allow persons with disabilities the opportunity to participate in programs and receive governmental benefits, such as are requested here. The plaintiff has not convinced the court that the rule is discriminatory vis a vis Ms. Lucier, and the court finds no basis for the larger constitutional argument. Pathways personnel attempted to accommodate Ms. Lucier in scheduling the hours necessary for ETEP approval, without success. The program is in no way obligated to waive fundamental requirements, just make reasonable accommodations. The DHS rule requiring a minimum participation level as an essential criteria is not violative of any anti-discrimination legislation.
This court has reviewed the certified record and the findings of law and fact made by Hearing Officer Lemery. The court has reviewed the various legal memoranda submitted by the parties. As a result of that review, this court finds that the Hearing Officer's conclusions of law are correct and that each finding of fact is supported by reliable, substantial and probative evidence, that which a reasonable mind might accept as adequate to support a conclusion. Caswell v. George Sherman Sand GravelCo., Inc., 424 A.2d 646 (R.I. 1981). The court is also satisfied that there have been no due process or equal protection violations in the agency's decision denying benefits to the plaintiff, and that the plaintiffs rights have not been prejudiced. The decision of the hearing officer is therefore sustained. However, the Department of Human Services is directed to assist the plaintiff and provide her with counselling and guidance regarding her education and employment goals, and redirect her, if appropriate, to services which might enable her to reach those goals. Plaintiffs request for costs and fees is denied.
Counsel shall submit the appropriate order for entry.