DECISION
The appellant, Samer Malko (Appellant), seeks reversal of the July 23, 2001 decision of the Rhode Island Department of Human Services (DHS). In its decision, DHS denied Appellant's application for Medical Assistance (MA) benefits, which would enable him to have surgery in Massachusetts. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
A resident of Rhode Island, the Appellant receives medical assistance (Medicaid) and Supplemental Security Income (SSI) benefits from the State of Rhode Island. While pushing a casino cart, the Appellant was injured at his place of employment, the Foxwoods Casino, in the State of Connecticut on or about June 18, 2000. As a result of his injury, the Appellant sustained a herniated disc which necessitated surgical correction.
The Appellant consulted a Rhode Island neurosurgeon, Dr. David DiSanto, for treatment on September 12, 2000. Dr. DiSanto treated the Appellant for his injury and recommended that the Appellant seek a surgical consultation with Dr. Charles Fager at the Lahey Clinic in Massachusetts. The Appellant had been a patient of Dr. Fager's in 1990 when he sustained a similar injury. In 1990, Dr. Fager performed a surgical procedure that effectively treated the Appellant's injury.
After conducting diagnostic procedures on the Appellant, Dr. Fager indicated that he could perform surgery on the Appellant with a ninety-five (95) percent chance of a full recovery. The Appellant consulted with Rhode Island physicians who indicated that they could perform the same surgical procedure with a sixty (60) percent chance of a full recovery.
On or about June 27, 2001, Dr. DiSanto submitted a note to the DHS Clinical Review Team, stating that "the patient needs surgery at the Lahey Clinic." In addition, Dr. Fager sent a letter to DHS, stating that the Appellant's best opportunity for recovery would be for the surgery to be performed at the facility.
The Appellant requested that DHS permit him to have the surgical procedure in Massachusetts at the Lahey Clinic. The Appellant's request was denied on the grounds that the surgical procedure was not incapable of being performed in Rhode Island. An administrative hearing was held on July 12th 2001 to appeal the decision of DHS denying the out of state medical assistance. The Hearing Officer affirmed the decision of DHS, and denied the Appellant authorization to have the surgery at the Lahey Clinic. This instant appeal followed.
 STANDARD OF REVIEW
The standard of review for this Court's appellate consideration of a decision of the Department of Human Services is governed by G.L. §42-35-15(g) of the Administrative Procedures Act. Said section provides for review of contested agency decisions as follows:
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on the questions of fact. The court may affirm a decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, pursuant to § 42-35-15, the Superior Court sits as an appellate court with limited scope of review.Mine Safety Appliances v. Berry, 620 A.2.d. 1255, 1259 (R.I. 1993). The Superior Court is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington School Committeev. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). If there is sufficient competent evidence in the record, the court must uphold the agency's decision. Id. at 805 (citing BarringtonSchool, 608 A.2d. at 1138). A judicial officer may reverse the findings of the administrative agency only in instances where the conclusions and the findings of fact are "totally devoid of competent evidentiary support in the record," (Bunch v. Board of Review, 690 A.2d 335, 337 (R.I. 1997); Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981), or from the reasonable inference that might be drawn from such evidence. Id. at 337 (quoting Guardino v. Department of SocialWelfare, 122 R.I. 583, 588-89, 410 A.2d 425, 428 (1980)). Additionally, questions of law are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts.Narragansett Wire Co. v. Norberg, 376 A.2d 1, 16 (R.I. 1977); Bunch, 690 A.2d. at 337.
 DEPARTMENT OF HUMAN SERVICES
The DHS is an agency within the executive branch of state government.See R.I.G.L. 1956 § 42-12-1 et seq. Pursuant to its statutory mandate, DHS is responsible for the management, supervision and control of various social service programs. Specifically, DHS is responsible for the management of state and federally funded public financial assistance programs. See R.I.G.L. 1956 § 42-12-4. The DHS is also responsible for administering the Medical Assistance Program (Medicaid) within the standards of eligibility, as enumerated in R.I.G.L. 1956 § 40-8-3. For all eligible individuals, DHS must pay benefits pursuant to regulations it must develop and have approved by the federal government, as comporting with federal requirements in order to receive federal funding. In the creation of the Medicaid eligibility criteria, the state is obligated to follow the methodology determinations of the Supplemental Security Income Program and the Social Security Act of 1902. See42 U.S.C. § 1396 et seq. In addition, Title XIX requires that the State of Rhode Island establish a State Plan to be approved by the United States Department of Health and Human Services in order for the state to qualify for federal funding.
The DHS policy manual, § 314.05, regarding prior authorization for out of state care, provides in pertinent part:
 "The following conditions must be met to obtain prior authorization for out of state medical services:
 • If a patient requires services from an out-of-state hospital or physician, the patient's attending physician must submit written medical justification to the Division of Health Care Quality, Financing and Purchasing;
 • The Service which is required and being requested must not be available within Rhode Island."
The exceptions to the requirement of prior authorization for out of state care are found in § 314.05.05 of the DHS policy manual:
 "The following provisions are exceptions to the requirement for prior authorization:
 • Emergency medical treatment and hospital services were needed because the recipient's health would have been endangered if required to travel back to Rhode Island;
 • Treatment was provided by hospitals and practitioners located in close proximity to the Rhode Island state line (e.g., Attleboro, Seekonk, Fall River, New London, etc.) where it is the general practice for residents to use medical resources outside the State;
 • Medical and hospital treatment were provided to foster children residing with families located outside Rhode Island or in out-of-state residential treatment centers.
Furthermore, 42 C.F.R. § 431.52 provides for "Payments for Services Furnished Out of State." According to 42 C.F.R. § 431.52, a state plan must provide for services furnished in another state to the same extent that it pays for services within its boundaries if the one of the following criteria is met: (1) Medical services are needed because of a medical emergency; (2) Medical services are needed and the recipient's health would be endangered if he were required to travel to his state of residence; (3) The state determines on the basis of medical advice, that the needed medical services, or necessary supplemental resources, are more readily available in other states; or (4) It is general practice for recipients in a particular locality to use medical resources in another state.
 DECISION OF THE HEARING OFFICER
The Appellant argues that he has written medical justification from his physician stating that the surgery has a better chance of success if it is performed out of state at the Lahey Clinic. DHS responds that the documentation from the Appellant's physician is not convincing as to the unavailability of the procedure in Rhode Island.
Section 314.05 of the DHS policy manual provides that the service which is required and being requested must not be available within Rhode Island — which is analogous to 42 C.F.R. § 431.52(3) above. Accordingly, the Hearing Officer appointed by DHS denied the Appellant's appeal of DHS's denial of out of state services based on the grounds that the surgical procedure is available in Rhode Island. (See Amended Administrative Hearing Decision at 4.)
The Record reflects that the Hearing Officer heard testimony from the Appellant and considered evidence submitted by the Appellant from his physicians. The evidence submitted by the Appellant's physicians supported the performance of the surgery at the Lahey Clinic. The record reflects that the Hearing Officer considered evidence from the Appellant's Rhode Island neurosurgeon, David DiSanto, M.D., stating that the odds for recovery for the Appellant were better at the Lahey Clinic in Massachusetts than in Rhode Island, "The odds they gave him for recovery of his left leg pain at Lahey Clinic was far superior than what I could offer him here in Rhode Island, therefore, the patient elects for better odds at the Lahey Clinic for surgical intervention." (See letter from David DiSanto, M.D. dated August 14, 2001.)
In addition, the Hearing Officer considered the evidence from Peter Dempsy, M.D., a neurosurgeon from the Lahey Clinic, who wrote a letter in support of having the surgery performed at the Lahey Clinic. (See letter from Peter K. Dempsy, M.D. dated June 28, 2001.) Finally, the Hearing Officer heard evidence from another neurosurgeon from the Lahey Clinic, Charles A. Fager, M.D., who previously performed a similar surgical procedure on the Appellant, stating that in his opinion the Appellant's best chance for recovery would be better at the Lahey Clinic. (See letter from Charles A. Fager, M.D. dated June 26, 2001). The Hearing Officer, however, determined from this evidence that the conditions of the Appellant's Medicaid policy had not been met. (See Amended Administrative Hearing Decision at 4.) Specifically, the Hearing Officer determined that the evidence from the physicians did not provide "specific medical justification in support of the need for out of state medical services, and the service must not be available in the State of Rhode Island." Id.
(emphasis in original).
The Hearing Officer also heard testimony from a representative of DHS, Paula Avarista, Chief of Pharmacy and Related Services within the DHS. Ms. Avarista testified regarding the documentation from the Appellant's physicians that, ". . . none of the documentation that we've received states anything to that affect [sic] that is — we have no request from the doctor stating why the surgery can't be done in Rhode Island." (See Tr. at 4.) Ms. Avarista also testified regarding the letter from Dr. Fager, "Basically this letter is just stating that they are familiar with him and do this surgery there which is fine but no one is telling us that it's not available here and our nurses felt that it was available here." (See Amended Administrative Hearing Decision at 4.) Ms. Avarista testified that DHS only based its decision to grant an out of state payment in the instant case on whether the procedure is available in Rhode Island. (See Tr. at 19.) It is clear from the record that the Hearing Officer gave great deference to the testimony of Paula Avarista.
The Hearing Officer also heard testimony from the Appellant. The Appellant testified that his Rhode Island neurosurgeon, Dr. DiSanto, gave him a 50/50 chance of success with the surgery. (See Tr. at 14.) Appellant also testified that the neurosurgeon from the Lahey Clinic, Dr. Fager, gave him a ninety-five (95) percent chance of recovery after having reviewed his MRI. The Appellant also testified that he researched the costs of the procedures in both states and that they are the same. (See Tr. at 18.) The Hearing Officer agreed to keep the record open for another week in order to provide the Appellant with the opportunity to provide DHS with documentation in support of his testimony. (See Tr. at 18.)
DHS has been entrusted with the administration and enforcement of Rhode Island's Medicaid program. The Rhode Island Supreme Court has found that, "[T]he law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." Statev. David Cluley, No. 2001-569-M.P., slip op. at 6, (R.I., filed November 12, 2002) (quoting In re Lallo, 768 A.2d 921, 926 (R.I. 2001)). The testimony of Ms. Avarista reflects the agency's practice of not taking into consideration other factors such as patient choice, odds of recovery, or cost of procedure when determining eligibility for out of state medical care. It is well settled that a practitioner of medicine or surgery does not warrant that his treatment or operation will be successful, but only that he possesses, and will carefully apply, such professional skill and learning as are ordinarily possessed by general medical practitioners. See 61 Am. Jur.2d Success or failure of treatment
§ 191 (2002).
The Hearing Officer made findings of fact and conclusions of law after reviewing the testimony and evidence presented by the Appellant and DHS. The Hearing Officer noted in his conclusions of law that:
 "A note from the RI Physician states that the appellant needs the surgery at the Lahey Clinic, but does not offer or discuss the odds of recovery, and does not offer or discuss any clinical evidence that justifies the out of State medical service. A review of other correspondence from the RI Doctor, and a review of the testimony by the appellant, clearly leads one to realize the surgery is available in the State of RI." (See Amended Administrative Hearing Decision at 4.)
This Court gives deference to the agency's interpretation of42 C.F.R. § 431.52 as adopted by the Rhode Island Medicaid program. Accordingly, this Court finds that the decision of the Hearing Officer was not clearly erroneous in view of reliable, probative, and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion.
 CONCLUSION
After a thorough review of the entire record in this matter, this Court finds that the DHS's decision is supported by substantial, reliable, and probative evidence and was not made upon unlawful procedure or in violation of constitutional or statutory provisions, or affected by other error of law. Substantial rights of the petitioners have not been prejudiced. Accordingly, the August 1, 2001 decision of the Department of Human Services is affirmed.
Counsel shall submit the appropriate judgment for entry.