MINE SAFETY APPLIANCES CO.

v.

**Eula Mae BERRY et al.**

No. 91–482–M.P.

Supreme Court of Rhode Island.

Feb. 23, 1993.

Andrew B. Prescott, Tillinghast, Collins & Graham, Providence, David J. McAllister, Scott Zimmerman, Pittsburgh, PA, for plaintiff.

William Y. Chaika, Cranston, Cynthia Hiatt, R.I. Com'n on Human Rights, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case came before us on a petition for certiorari filed by the employee, Eula Mae Berry (Berry), seeking review of a judgment entered in the Superior Court vacating an order of the Rhode Island Commission for Human Rights (the commission). In an order entered below, the trial justice determined that the commission was clearly erroneous in finding that the employer, Mine Safety Appliances Co. (MSA), discriminated against the employee because of her race. After careful review of the record we affirm the judgment of the Superior Court.

On May 1, 1989, Berry filed a charge with the commission, alleging that M.S.A. had discriminated against her with respect to terms and conditions of employment and promotion because of her race and color, in violation of the Rhode Island Fair Employment Practices Act, G.L.1956 (1986 Reen-

actment) chapter 5 of title 28. After the commission completed a preliminary investigation, a complaint was issued against M.S.A. on January 29, 1990. A hearing on this matter was thereafter held at the commission on June 27, 1990. The following facts were adduced at that hearing.

Berry, who is black, had been employed by M.S.A. since December 1978 in its Esmond, Rhode Island division, where gas masks are produced for commercial use as well as for the armed forces. This facility is organized into numerous departments, each of which is responsible for manufacturing certain products and is supervised by a group leader. According to the general supervisor of the Esmond division, Ralph Cole (Cole), the duties of a group leader include coordinating productivity on a daily basis, planning and organizing the work force in that area, monitoring performance, enforcing company policies and procedures, maintaining weekly schedules, and identifying M.S.A. products by a six-digit part number.

In 1983 M.S.A. used an informal process by means of which an employee could express his or her interest in being considered for a group-leader position. Once the supervisors had compiled a list of names of all interested employees, the candidates were interviewed and tested by an independent counseling firm. Through this appraisal process M.S.A. was able to appoint group leaders for approximately three years. The employer's productivity, however, greatly declined in 1986 largely as a result of the reduced workload required under its government contracts. Consequently M.S.A. downsized from 1,000 employees to 500 employees, which in turn eliminated the need for more group leaders. The informal appraisal process for promoting employees to group leaders thus was set aside until 1989 when productivity rose again. It was events that occurred during the interim years that underlie Berry's allegations of discrimination.

A group-leader position was due to become vacant in Department 221 in December 1988, at which time Cole had only three

weeks to fill the post. After consulting with the division manager and the production supervisor in that area, Cole was informed that that position was to be considered only temporary because it was expected that Department 221 would no longer be located within MSA's Esmond division. Cole proceeded to identify candidates for this group-leader position in three different categories: employees with work experience in that department, existing group leaders whose present job assignments would be "phased out" in the future, and employees from throughout the plant who had heard of the vacancy and who came forth and identified themselves to Cole as interested applicants. Because of the temporary nature of the vacant position, Cole and the division manager determined that it would be a disservice to the employees in the second and third groups to take any employee away from his or her stable position within the work force. Consequently only four candidates from within Department 221 were seriously considered for this promotion, each of whom had experience, knowledge, and job skills in the processes employed in that department. Of these four candidates two were white females and two were white males.

On or about December 19, 1988, Carol Radican (Radican) was chosen as the new group leader in Department 221. Cole testified that Radican was a very conscientious and dedicated employee. He also stated that she had a thorough working knowledge of the operation of that department's manufacturing system and its quality standards and that, through other jobs she had held within that department, she had gained familiarity with the various part numbers, the billing material system, and the routing system.

Conversely Cole testified that Berry was never considered for this group-leader position because she did not have the job knowledge or the working experience within Department 221. Additionally she had never advised Cole prior to this action that she wished to be considered to fill this group-leader vacancy or any other. The only testimony at the hearing that suggested that Berry was interested in changing her position at M.S.A. at all was presented by employee herself. She stated that on a previous occasion she had applied to be transferred to the quality-control department, a department within M.S.A. in which only white people were working. That transfer request was denied because she was not the most senior employee seeking that position at that time. In any case the position Berry sought within quality control was not as a group leader.

Soon after Radican was promoted to group leader, Berry contacted MSA's personnel manager, Lorrie Foehr (Foehr), to determine why no minorities were serving as group leaders or supervisors in the company. As Foehr had just returned to her position at M.S.A. two months earlier after a two-year hiatus, she could not explain why minorities were not holding such positions. Berry then questioned what the qualifications were for becoming a group leader. According to Berry, Foehr responded that one must "get along with people."

Throughout the hearing before the commission, Berry contended that she is more qualified to be a group leader than Radican for a variety of reasons. Berry had been employed by M.S.A. since 1978 while Radican had been with the company only since 1982 and in Department 221 only since 1986. According to Berry, being a group leader entailed nothing more than simple paperwork, which made her more qualified than Radican because she had experience in managing her own jewelry business and maintaining the books herself. Furthermore, Berry's educational background included a high school degree as well as some college courses; Radican attended high school only. Berry also stated that when she was asked to work at one particular job within Department 221 for a short period to help that department complete a project by a given date, she had the opportunity to see the work that that group leader did. In her opinion anyone could perform such tasks because of their simplicity in comparison with the demands of her job, which involved much tedium and required skill.

On May 1, 1991, the commission entered its decision and order in favor of Berry. In that decision the commission found that in January 1990 M.S.A. employed approximately 425 employees, 52 of whom were minorities but only 2 of whom had appointments as group leaders from 1967 to 1988. The commission also found that M.S.A. instituted a different system of selecting group leaders after Berry had filed her charge with the commission.[1] The commission thereafter analyzed the issue of race discrimination in accordance with federal cases interpreting Title VII of the Civil Rights Act of 1964. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Domingo v. New England Fish Co.,* 727 F.2d 1429 (9th Cir.1984); *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972).

In *Burdine* the Supreme Court reiterated the standards it had enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for evaluating evidence of racial discrimination in the workplace.

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' * * * Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093, 67 L.Ed.2d at 215.

To aid the factfinder in determining whether an employee has satisfied his or her initial burden of proof, the Supreme Court presented a model outline for establishing a prima facie case of discrimination. Although the following standards may be altered as the facts of each case may dictate, the plaintiff must show

"(i) that he [or she] belongs to a racial minority;

"(ii) that he [or she] applied and was qualified for a job for which the employer was seeking applicants;

"(iii) that, despite his [or her] qualifications, he [or she] was rejected; and

"(iv) that, after his [or her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S. Ct. at 1824, 36 L. Ed.2d at 677.

In accordance with the model case disclosed in *McDonnell,* the commission determined that Berry could, and indeed did, establish a prima facie case of discrimination by proving that (1) she is black, (2) a position became available, (3) she applied for the position, (4) she was qualified for the job, and (5) the employer chose to promote a white person. The commission next found that MSA's only legitimate, nondiscriminatory reason for not considering Berry for the promotion to group leader of Department 221 was the good work and experience of Radican. However, the commission stated that Berry successfully proved that MSA's articulated reason was merely a pretext for discrimination through her testimony that the group-leader position did not require great skill and that she easily adapted to the new procedures and tasks within Department 221 when she worked there for a short period of time. The commission thus concluded that although Berry was more qualified for the position than Radican, she was denied the position because of her race and color.

The employer appealed the commission's decision and order to the Superior Court

---

1. In 1989 M.S.A. launched a new appraisal process for elevating employees to group leader, which included a written examination. Berry originally complied with all the formal requirements but later withdrew from consideration primarily because Radican had not been subject to the same evaluation process before her position as group leader became permanent in June 1989.

pursuant to G.L.1956 (1986 Reenactment) § 28–5–28 and G.L.1956 (1988 Reenactment) § 42–35–15. In a bench decision rendered on September 4, 1991, the trial justice found that the commission's decision and order were clearly erroneous in view of the reliable, probative, and substantial evidence on the record. Specifically the trial justice determined that the record lacked probative evidence to support the commission's findings that Berry was qualified for the promotion to group leader of Department 221 and that Berry's previous expression of interest in a transfer to another department amounted to an application for a position as a group leader. The trial justice stated that "[t]he Court cannot find factual foundation for the ultimate conclusion of the Commission even when considering the different inferences which the Commission could have drawn from the evidence."

On September 6, 1991, a Superior Court order was entered vacating the order of the commission and entering judgment in favor of MSA. Berry filed a timely petition for certiorari with this court on September 25, 1991, pursuant to § 42–35–16. We granted certiorari on July 2, 1992.

■ In reviewing a decision of the Superior Court by way of certiorari, we are limited to an examination of the record to determine whether "some" or "any" legally competent evidence exists to support the lower court's findings. *Sartor v. Coastal Resources Management Council,* 542 A.2d 1077, 1082–83 (R.I.1988) (citing *Mendonsa v. Corey,* 495 A.2d 257, 260 (R.I.1985)). We may also draw reasonable inferences from the record to support the findings of the Superior Court. *Guarino v. Department of Social Welfare,* 122 R.I. 583, 588–89, 410 A.2d 425, 428 (1980). Applying these standards, we find that the trial justice's conclusions were amply supported by the record.

■ The employee contends, however, that the trial justice erroneously substituted her judgment for that of the commission with respect to the credibility of witnesses and the weight of the evidence and in excess of her statutory authority to review

the commission's decisions as prescribed by § 42–35–15(g). When reviewing an agency decision pursuant to § 42–35–15, the Superior Court sits as an appellate court with a limited scope of review. The trial justice may affirm the agency's decision or remand the case for further proceedings; it may also reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the agency's inferences or conclusions are

"(1) [i]n violation of constitutional or statutory provisions;

"(2) [i]n excess of the statutory authority of the agency;

"(3) [m]ade upon unlawful procedure;

"(4) [a]ffected by other error or law;

"(5) [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

"(6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 42–35–15(g).

■ Our review of the record reveals that the trial justice properly engaged in a limited inquiry into the commission's decision when she questioned the commission's determinations that Berry was qualified for the promotion and that she applied for that position. We shall turn first to the issue of Berry's qualifications. In Title VII cases the plaintiff bears the burden of establishing that he or she was the better qualified candidate for the promotion sought. *Gairola v. Virginia Department of General Services,* 753 F.2d 1281, 1287 (4th Cir.1985). Although Berry relied heavily on her length of service with M.S.A. in comparison to Radican's, it was not established that this tenure alone would render an employee qualified for a group-leader position in a department in which that employee had little or no work experience. Consequently we find that the trial justice did not err as a matter of law in finding that there was no reliable, probative, or substantial evidence to support the premise that Berry was more qualified than Radican.

Similarly we find that the trial justice was correct in stating that the record lacked evidence to support the commis-

sion's postulation that Berry had applied to be group leader of Department 221. In its decision, the commission reasoned that,

"[she] did not apply for the job because the vacancy was not posted and she did not hear of the opening. However since [she] was eligible for promotion, given her employment record, and since she had previously expressed an interest in promotion (Trans. p. 29) the Commission will consider that the prima facie case has been made.

" * * *

"The [employer] cannot use [Berry's] inability to apply as a justification for not promoting her when the [employer] used word of mouth recruiting, management was primarily or exclusively white and [MSA] promoted no black employees to group leader from 1968 until after the [employee] filed her charge."

Our review of the record reveals that the trial justice did not err in finding that the commission erroneously concluded that Berry had applied for the group-leader position for two reasons. First, the commission referred to a specific portion of the hearing transcript to buttress its argument that Berry was interested in a promotion. However, that portion of the transcript merely reveals that she had applied for a transfer to another department within the company. Upon reviewing these facts, we agree with the trial justice's conclusion that the commission misconstrued the evidence and that its inferences were neither reasonable nor supported by the evidence in the record.

Second, the commission's reliance on the discriminatory nature of MSA's recruiting process is equally strained. Although a host of federal cases have found word-of-mouth recruiting to be evidence of racial discrimination, see, e.g., Domingo v. New England Fish Co., 727 F.2d 1429 (9th Cir. 1984); Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir.1972), the facts of this case do not mandate such a conclusion. The management of M.S.A. employed three methods by which it would compile a short list of candidates to fill the vacant position in Department 221. "Grapevine" or word-of-mouth recruiting produced only three candidates, all of whom were quickly disregarded. Six other candidates surfaced by way of the other two methods: four employees who had experience in Department 221 and two then-group leaders whose departments were being eliminated. Since it is unrefuted that the four employees working in Department 221 were those candidates seriously considered for the promotion, it is irrelevant that three other employees had expressed interest in the position when they heard it was to become vacant. Again we find that the trial justice properly found that the commission was clearly in error in determining that Berry had applied for the vacant position because this assertion is unsupported by the record.

In concluding that there was no reliable, probative, and substantial evidence to support the premises that the employee was qualified for the position and that she applied for the position, the trial justice abrogated the employee's prima facie case of discrimination. We find that the trial justice appropriately reasoned that the commission clearly made an erroneous finding when it determined that the employee was more qualified than Radican and thus was the victim of racial discrimination. Consequently we find that the trial justice did not err as a matter of law in vacating the order of the commission and entering judgment in favor of the employer.

Accordingly the petition for certiorari is denied, and the writ heretofore issued is quashed. The judgment and the order of the Superior Court are affirmed, and the case may be remanded to the Superior Court with our decision endorsed thereon.