AMENDED DECISION
Before this Court is the administrative appeal of William Estrella from a decision of the Rhode Island Ethics Commission. In its decision, the Commission ordered Mr. Estrella to pay $2,000 in fines for his failure to timely file financial disclosure statements for the years 1993, 1994, 1995, and 1996 in violation of R.I.G.L. 1956 § 35-14-16. Jurisdiction is pursuant to G.L. § 42-35-15(b).
 Facts and Travel
On October 19, 1999, the Rhode Island Ethics Commission (the "Commission") held an adjudicative hearing in open session to determine if Mr. Estrella ("Appellant") failed to timely file his financial disclosure statements for the years 1993, 1994, 1995, and 1996 in violation of G.L. § 35-14-16. The prosecution ("Appellee") called Raymond Bouchard, Michelle Lee, and Anthony Lupinacci as witnesses. The Appellant testified on his own behalf.
 Testimony of the Prosecution's Witnesses
Mr. Bouchard testified that he worked as a Commission investigator from May, 1992 until March, 1999. He testified that the Commission keeps a folder for the financial disclosure statements of each public official. When the Commission receives the original financial disclosure statements from the public official, they are put in the appropriate folder. The Commission then inputs the information from the statements into the Commission's computer database. Mr. Bouchard conducted a "preliminary investigation" of the Appellant based upon anonymous information received by the Commission which alleged that the Appellant participated in official matters relating to the Warren Historic District at a time when he owned property in the district. In accordance with the Commission's customary investigator practices, he examined Appellant's financial disclosure statements. He found Appellant's folder contained only a financial disclosure statement for the year 1992. He thereafter searched the computer database and found record of the Appellant's financial disclosure statements for the years 1984-1992, but found no record of any financial disclosure statements filed by the Appellant for the years 1993-1996. When asked if the original financial disclosure statements may have been misplaced or lost in 1996 when the Commission moved its offices or otherwise, Mr. Bouchard testified that in such a case the Commission's computer database would have reflected the information.
According to Mr. Bouchard's testimony, Attorney Anthony DeSisto went to the Commission in April of 1998 and requested financial disclosure forms for the years 1993-1996 on behalf of the Appellant. Mr. Bouchard provided Mr. DeSisto with original statements for the years 1994, 1995, and 1996. He was unable to provide Mr. DeSisto with an original 1993 form because the Commission no longer had any 1993 forms. Michelle Lee, a Commission employee, altered an original 1994 form by replacing the number "4" with the number "3" throughout the document. This form was then given to Mr. DeSisto to serve as an original 1993 form.
In August of 1998, the Commission held a meeting regarding the charges filed against Appellant. Present at the meeting were Colleen Brown, the Appellant, and Mr. DeSisto. The Appellant offered photocopies of his financial disclosure statements for the years 1993-1997. Mr. Bouchard noted that the 1993 form was the altered 1994 form given to Mr. DeSisto in April of 1998. Mr. Bouchard testified that when he examined the statements he found that they appeared to be the original forms provided to Mr. DeSisto on behalf of Appellant in April 1998. The Commission refused these forms as they were photocopies which were not notarized. On August 24, 1998, the Commission received in the mail what appeared to be the same documents that Appellant had offered at the meeting. They were refused again for the same reason. On September 1, 1998, the Commission received from the Appellant the original financial disclosure statements which were notarized. Mr. Bouchard testified that when he examined the statements he found that they appeared to be the original forms provided to Mr. DeSisto on behalf of Appellant in April, 1998. The forms were accepted at that time.
Ms. Lee testified at the hearing that she worked for the Commission as a legal secretary for three years. She indicated that the Commission has at all times followed a routine procedure when it receives financial disclosure statements by mail and by hand-delivery. When financial disclosure statements are received by mail, they are opened and reviewed for the notary signature. They are then time stamped and given to her. She then enters the information into the computer database and files the forms in each official's financial disclosure statement folder. When financial disclosure statements are hand-delivered, the staff member who accepts the forms, checks for a notary signature, time stamps the forms, gives them to Ms. Lee for entry into the official's folder and the computer database. Ms. Lee testified that she was shown this procedure by the former office manager and that to her knowledge the Commission has followed these described procedures for the past twenty years. When she conducted a search of Appellant's records, she found that he had failed to file financial disclosure statements for the years 1993-1996. She corroborated Mr. Bouchard's testimony that in April of 1988, she altered an original 1994 form to serve as a 1993 form for the Appellant by changing the "4s" to "3s."
The prosecution also called as a witness Mr. Lupinacci, an employee with the Department of Administration Library Technical Support Services. Mr. Lupinacci was excused when the parties stipulated that the financial disclosure statements were mailed and received by Appellant for the years 1993-1996. After the parties so stipulated, the prosecution rested.
 Appellant's Testimony
The Appellant testified on his own behalf He admitted that he received the financial disclosure statements for the years 1993-1996. He denied trying to pass off the forms given to Mr. DeSisto in April of 1998 on his behalf as copies of the original financial disclosure statements which he claimed were timely filed. He stated that he filed the statements for the years 1993-1996. When asked who notarized the documents he claims he timely filed, he stated that he could not recollect. He testified that he normally had the town clerk, the assistant town clerk, or the solicitor notarize his statements. The Appellant suggested that the Commission must have lost his financial disclosure statements.
The Appellant also testified that in July of 1996, the Commission issued a list of officials who had not filed their financial disclosure statements. He stated that when the Providence Journal published the list, his name was not included. He admitted, however, that the Providence Journal might not have printed a complete list. He also testified that he must have filed because a former competitor candidate for Town Council would have raised the issue during the election if Appellant had not filed. The Appellant did not call the competitor candidate as a witness. He admitted that he had kept photocopies of his 1984-1992 financial disclosure statements and his 1997 financial disclosure statement but that he had not kept copies of the statements for the years 1993-1996.
 The Commission's Decision
At the conclusion of the testimony of the parties, the Commission heard closing arguments and requested that the parties submit supplemental memoranda on or before November 2, 1999 regarding the presumption of regularity and the standard of proof of the nonoccurrence of an event. On November 2, 1999, in open session, the Commission reviewed the supplemental memoranda without oral argument. Thereafter, the Commission immediately began deliberations. The Commission concluded, after consideration of all the evidence presented, that Appellant did not file his financial disclosure statements for the years 1993, 1994, 1995, and 1996. The Commission found that, by failing to file the financial disclosure statements, Appellant "knowingly and willfully" violated the Code of Ethics, G.L. § 36-14-16. The Commission found the testimony of Appellant that he had filed the statements with the Commission for the years 1993-1996 to be incredible. The Commission found that the Commission followed a routine practice and procedure for filing financial disclosure statements and for inputting information from the financial disclosure statements into a computer database. In its decision, the Commission reasoned that in order for it to believe Appellant's testimony that he had filed the statements with the Commission for the years 1993-1996, the Commission would have to believe and accept that the Commission's routine practice and procedure for keeping and maintaining the financial disclosure information had failed four years in a row; that the Commission had not only lost four years of original financial disclosure statements but also had failed to input Appellant's financial disclosure information in the computer database four years in a row. The Commission found "particularly unbelievable" that Appellant would not have maintained copies of the financial disclosure statements for the years 1993-1996 since he had the foresight to keep photocopies for the years 1984-1992 and the Appellant knew one of his opponents for Town Council would likely raise the issue of his alleged failure to file financial disclosure statements during the campaign.
Predicated on these findings, the Commission found that the Appellant, an elected member of the Warren Town Council, violated G.L. § 35-14-16 for his failure to timely file his 1993, 1994, 1995, and 1996 financial disclosure statements. The Commission assessed a penalty of $500 for each of the four violations against the Appellant for a total penalty of $2,000.
The Appellant filed a timely appeal. In his memorandum, he seeks reversal of the Commission's decision on the grounds that the Commission abused its discretion in making findings that were unsupported by the substantial evidence on the record and that the Commission's decision was affected by clear error of law; specifically, the Commission's failure to produce a copy of the anonymous information and to identify its author during discovery was violative of Regulation 1008(c). In addition, Appellant argues that the Commission's investigation was incomplete because it lacked testimony from a crucial witness, and it violated the 180-day rule of Regulation 1004(b). The Appellant further contends that the Commission also erroneously found that the Commission followed a routine practice and procedure for the maintenance of public official's financial disclosure statements by misapplying the presumption of regularity in the Commission's favor. Lastly, Appellant argues that the Commission applied the wrong state of mind standard and failed to meet its burden of proof with regard to the proper "knowing and willful" state of mind.
 Standard of Review
The review of a decision of the Commission by this Court is controlled by G.L. § 42-35-15(g) of the Administrative Procedures Act, which provides for review of a contested agency decision:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, pursuant to § 42-35-15, the Superior Court sits as an appellate court with a limited scope of review. Mine Safety Appliances v. Berry 620 A.2d 1255, 1259 (R.I. 1993). The Superior Court is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Associates, Ltd v. Nolan 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington School Committee v. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). In conducting that review, "the Superior Court may not, on questions of fact, substitute its judgment for that of the agency whose action is under review" Id. at 805 (quoting Rhode Island Public Telecommunications Authority v. Rhode Island State Labor Relations Board650 A.2d 479, 485 (R.I. 1994)), even in a case in which the court "might be inclined to view the evidence differently and draw inferences different from those of the agency." Id. at 805 (quoting R.I. Public Telecommunications, supra.) If there is sufficient competent evidence in the record, the court must uphold the agency's decision. Id. at 805 (citing Barrington School 608 A.2d. at 1138.) The court may, however,
 "reverse, modify, or remand the agency's decision if the decision is violative of constitutional or statutory provisions, is in excess of the statutory authority of the agency, is made upon unlawful procedure, is affected by other errors of law, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious and is therefore characterized by an abuse of discretion." Id. at 805 (citing § 42-35-15(g)).
A judicial officer may only reverse the findings of the administrative agency in instances wherein the conclusions and the findings of fact are "totally devoid of competent evidentiary support in the record," Bunch v. Board of Review 690 A.2d 335, 337 (R.I. 1997) (quoting Milardo v. Coastal Resources Management Council 434 A.2d 266, 272 (R.I. 1981)), or from the reasonable inferences that might be drawn from such evidence. Id. at 337 (quoting Guarino v. Department of Social Welfare 122 R.I. 583, 588-89, 410 A.2d 425, 428 (1980)). Questions of law are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts. Narragansett Wire Co. v. Norberg 376 A.2d 1, 16 (R.I. 1977), Bunch 690 A.2d. at 337.
 The Commission's Investigation of Appellant
The Appellant asserts that the Commission wrongfully refused to produce a copy of the anonymous letter which prompted the investigation of him. He argues this failure to produce a copy of the letter was a violation of Regulation § 36-14-1008(c) of the R.I. Ethics Commission Procedural Regulations. The Appellant also contends that the prosecution violated Regulation 1004(b) by failing to complete its investigation of him within the 180-day time frame imposed by the Rhode Island legislature. The Commissions s findings to the contrary, Appellant argues, lacked substantial evidence and constituted an abuse of discretion.
The Appellee responds that it followed all lawful procedures with regard to the production of the letter and the investigation of Appellant. The chain of events, as told by the Appellee, are as follows. The Executive Director and/or designee received anonymous information on or before February 9, 1998, indicating the Appellant may have violated the Rhode Island Code of Ethics. On February 9, 1998, the Executive Director and/or designee initiated a preliminary investigation of Appellant "in order to determine whether the activities referenced in the information received warranted the filing of a formal complaint." ("Notice of Initiation of Preliminary Investigation.") On April 10, 1998, Raymond E. Bouchard, the Commission investigator, filed a complaint charging the Appellant with having participated in the Council's consideration of historic district matters while owning property in the district (as alleged in the anonymous writing), and with failing to file financial disclosure statements for the years 1993, 1994, 1995, and 1996. On September 23, 1998, the Appellee found that the Complaint, as it related to Appellant's participation in Council matters regarding the historic district, did not allege sufficient facts to constitute a violation of the Code of Ethics. The Commission issued an order dismissing the historic district allegation. On the same date, the Appellee made its determination that the allegations concerning the Appellant's failure to file financial disclosure statements were sufficient to constitute violations of the provisions of the Code of Ethics. It authorized a "full investigation" of the matter. (Appellee Memorandum, at 2). According to the Appellee, it also showed good cause on September 23, 1998 to warrant a 60-day extension of the 180-day time period. The Appellee filed its investigative report on October 9, 1998. On October 14, 1998, the Appellant filed his Answer, along with a Request for Production and Discovery. On October 30, 1998, the Commission forwarded to the Appellant a Notice of Hearing Regarding Probable Cause and Right to Appear, as well as a copy of the Investigative Report.
On November 13, 1998, the Appellee forwarded requested discovery to Appellant including interview reports, financial disclosure statements, and copies of the Commission's mailing lists for the years 1993-1997. Thereafter, on November 17, 1998, the Appellant filed an initial response to the investigative report. Correspondence from the Appellant at this time requested the name and address of Ms. McCurdy, former employee of the Commission, and the name of the individual who had provided the information with regard to the historic district allegations. The Commission refused both requests. Ms. McCurdy had relocated and the Commission could not provide Appellant with her address. With regard to the anonymous information and its source, the Commission refused on the ground that it was irrelevant. The Appellee argues that the Appellant was never entitled to a copy of the anonymous information because it raised allegations that never came to fruition. The charge pertaining to those allegations was unsubstantiated and dismissed. The Commission's complaint was merited solely on the charge that the Appellant failed to file his financial disclosure statements. With regard to that charge, the Appellant was given all relevant investigative materials.
The Appellant argues the Commission violated Regulation 1004(b). This regulation is virtually identical to § 36-14-12(c) which provides:
 "Upon receipt of a written complaint alleging a violation of this chapter, the commission shall within one hundred eighty (180) days of receipt of the written complaint complete its investigation; provided that, the commission may, for good cause shown, grant no more than two (2) extensions of sixty (60) days each."
Our Supreme Court has spoken with regard to this provision in Clarke v. Morsilli 714 A.2d 597 (R.I. 1998). The Supreme Court interpreted the words "complete its investigation" in § 36-14-12 to mean that the Commission must make a finding of probable cause within the 180-day statutory time limit, subject to either one or two 60-day time extensions which may be granted upon a showing of good cause. The Court stated:
 "It is, after all, the determination by the commission as to whether probable cause exists to pursue the ethics complaint that both marks for certain the completion of a commission investigation and serves to apprise the subject of the investigation of the commission's findings. Without an event to denote an investigation's conclusion, both the subject of the investigation and the public at large are left to wonder exactly when the investigator phase has ended." Id. at 600. (Emphasis added.)
Similarly, this Court must identify the act which marks for certain the commencement of the investigator period for the purpose of calculating the 180-day statutory period. The statute states plainly and unambiguously that the 180 days begins upon the Commission's "receipt of the written complaint."(§ 36-14-12(c)) (emphasis added). The statute defines "complaint" in § 36-14-12(b): "Any complaint filed with the commission shall be a statement in writing under oath which shall include the name of the person alleged to have committed the violation and which shall set forth in detail the specific act or acts complained of." In the present action, a person did not file a "complaint," but rather submitted other information to the Commission. The Appellee argues that in this situation the Commission must first investigate the allegations contained in the information in order to "determine[s] whether the activities referenced in the information received [warrant] the filing of a formal complaint" by a Commission member. ("Notice of Initiation of Preliminary Investigation.") Appellee correctly points out that any person, including a Commission member, can file a complaint. (§ 36-14-12(b)). The Appellee asserts, however, that a Commission member cannot file a complaint on any information. It must first conduct a preliminary investigation. If a "preliminary investigation" warrants a formal complaint, one is then filed by a Commission member. According to Appellee, the 180-day statutory time frame (with the opportunity of two additional 60-day extensions for good cause shown), in which the Commission must complete its investigation of the accused by finding whether or not probable cause exists, only applies to "full" investigations which are conducted post-complaint. The 180 days, Appelle argues, begins on the date of filing. Therefore, Appellee argues the 180-day time frame is inapplicable to "preliminary" investigations conducted prior to the filing of the complaint.
This Court finds no support in the statute for the Appellee's distinction between "preliminary" and "full" investigations. The statute speaks of only one investigation, which occurs post-complaint and is subject to a 180-day time frame. In fact, the legislature chose the word "preliminary" in describing this one investigation See § 36-14-12(c)(3). A complaint need not be "warranted" as argued by the Appellee; it need only "allege facts sufficient to constitute a violation of any of the provisions of [the] chapter." See, § 36-14-12(c)(1) and (2). Complaints lacking merit are easily weeded out during this one investigation, the findings of which determine whether probable cause exists to proceed further See § 36-14-12(c)(3). A statute which provides that a thing should be done in a certain way carries with it an implied prohibition against doing that thing in any other way." Sutherland Stat. Const. § 47:23 (6th Ed.) Clearly then, two "preliminary" investigations, as suggested by the Appellee, are prohibited by the statute which provides for only one preliminary, post-complaint investigation. A contrary interpretation would result in an opportunity for the Commission to contravene the statutorily imposed time frame of investigations by merely labeling some investigations "preliminary" or "pre-complaint." This would result in an investigator procedure which is unnecessarily repetitive, unduly prejudicial to the accused, and contrary to the intent of the legislature in enacting the provisions at issue. As set forth above, the legislature's intent is evinced throughout the statute. The statute requires a prompt investigation of which the accused is duly notified. See also. § 36-14-12(c) (requiring service on the accused of a copy of the complaint within 72 hours of filing), §36-14-12(c)(1) (requiring the contents and substance of any dismissed complaint to be made public), and § 36-14-12(c)(2) (directing the commission to "promptly investigate").
The Commission's investigation of the Appellant, therefore, began at the latest on February 9, 1998, upon the receipt of something other than a sworn complaint. The Commission did not file its own complaint on this information until April 10, 1998, but investigated the Appellant for approximately two months without any notice to him. Section 36-14-12(b) requires a copy of the complaint be served on the accused within 72 hours of the filing of the complaint.) It was not until September of 1998 that the Commission completed its investigation by dismissing the first charge and finding probable cause with regard to the second charge. This was over a month after the 180-day deadline had expired and was thus untimely. At no time was the Appellant given a copy of the writing which prompted the investigation against him.
This Court finds, in addition to the Commission's untimeliness in completing its investigation, that the Commission violated the Appellant's right to due process. The statute, in requiring a 180-day time frame for an investigation of an accused upon the Commission's receipt of a sworn complaint and requiring notice to the defendant within 72 hours of the filing of a written complaint (§ 36-14-12(b)), mandates that specific procedure govern the commencement of an investigation against an accused party. The Appellant was being investigated for two months or more while being unaware of the specific allegations against him or the identity of his accuser, and without any time constraint being imposed on the length of the investigation. The statute's language specifically seeks to avoid this result by requiring both a sworn, detailed writing as a complaint and by requiring that a copy of the complaint be sent to the accused within 72 hours of filing, evincing the importance of notice to the accused. The Commission may choose to disregard any unsworn writing as lacking the formality required in the statute, or it may choose to file a complaint through a member of the Commission with regard to such information. As previously mentioned, the statute merely requires that a complaint "allege facts sufficient to constitute a knowing and willful violation of any of the provisions of [the] chapter." § 36-14-12(c)(2). Additionally, the Commission must provide notice to the accused prior to commencing its "preliminary investigation" pursuant to the statute. See, § 36-14-12(b).
In Clarke the Supreme Court reviewed its stance on statutory time limitations imposed upon state agencies to investigate and complete complaint procedures. The Court analogized § 36-12-12(c) to the investigative and complaint time requirements applicable by statute to the Rhode Island Commission for Human Rights. In Roadway Express, Inc. v. Rhode Island Commission for Human Rights, 416 A.2d 673 (R.I. 1980), the Court stated: "Prompt notification will enable such persons to investigate alleged violations and to preserve evidence necessary to conciliate or to rebut the commission's charges." (416 A.2d. at 676) That position was reaffirmed in Wayne Distributing Co. v. Rhode Island Commission for Human Rights 673 A.2d 457, 461 (R.I. 1996). With regard to the applicability of this reasoning to the provision at issue in the case at bar, the Court stated in Clarke:
 "We note that when the Legislature first added the 180-day complaint investigation time limitation to the commission s proceedings, it was certainly aware of what we had said in Roadway pertaining to statutory time limitations imposed upon state agencies to investigate and complete complaint procedures, and did nothing at that time to indicate that the ethics commission complaint time limitation should be treated any differently from our reasoning and holding in Roadway."
 "The commission, for its part, urges upon us an interpretation of the statute that . . . . [i]f we were to accept that interpretation, the subject of the "completed" investigation required in the statute would remain in limbo, waiting for as long a time as the commission desired before the results of the "completed" investigation were finally divulged. As such, this interpretation by the commission is directly contradictory to the Legislature's clear purpose of ensuring that commission investigations come to an expeditious conclusion. That purpose is manifested by the Legislature's decision to impose its 180-day statutory limitation, subject to two 60-day extensions, upon the commission s investigator activities. As the commission's interpretation of § 36-14-12(c) frustrates this purpose, we must reject it."
This Court finds that the interpretation advanced by the Commission in this case, which permits it to conduct preliminary investigations outside the 180-day period without notice to the accused, likewise frustrates the legislature's clear purpose and is in excess of its statutory authority. Simply put, the Commission cannot begin an investigation without the filing of a complaint by a Commission member or other person and affording notice to the accused within 72 hours of that filing. This Court also holds that the Commission further violated the Appellant's right to due process by failing to give the Appellant notice before commencing an investigation of him. Additionally, the Commission acted in excess of its statutory authority in failing to complete its investigation of the Appellant within the 180-day time frame allowed by statute. The Commission began its investigation of the Appellant on or before February 9, 1998. It did not conclude its investigation until September 23, 1998. Its request for an extension came over a month after the expiration of the allowable period. Such an investigation is prohibited by the statute.
After review of the entire record, this Court finds that the substantial rights of the Appellant were prejudiced due to administrative findings and procedures that were violative of both constitutional and statutory provisions. Accordingly, this Court need not reach Appellant's other arguments which are hereby rendered moot. The Commission's decision is reversed in its entirety.
Counsel shall submit the appropriate order for entry.