[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Ronald Rotondo (hereinafter "Rotondo" or "Appellant") appeals from a decision of the Rhode Island Department of Human Services (hereinafter "DHS"), denying his application for Medical Assistance. Jurisdiction is pursuant to G.L. 1956 § 42-35-15. For the reasons set forth below, the Court reverses the decision of DHS and remands the matter to DHS with instructions.
 Facts and Travel
In July 2003, Rotondo was diagnosed with rectal cancer and began a lengthy course of treatment in an effort to control the cancer and recover from his illness. At the time of his diagnosis, Rotondo had been working as a self-employed ice cream vendor, but stopped working on July 16, 2003 due to his medical condition. On July 30, 2003, Rotondo filed an application for Medical Assistance. In support of his application, Rotondo submitted two required forms: one form completed by the applicant, entitled "Information for Determination of Disability" (AP-70), and another completed by his treating physician, Dr. James N. Butera, the "Physician Examination Report" (MA-63).
To qualify for benefits, Rotondo's medical impairment would have to be sufficiently severe to prevent him from performing any substantial gainful employment for a continuous period of at least twelve months. Rotondo claimed that he met those requirements and was entitled to benefits. In the Physician Examination Report (AP-70), dated August 5, 2003, Dr. Butera listed a diagnosis of rectal cancer and noted that Rotondo's impairment would be "expected to last 12 months or result in death." However, Butera left several spaces blank and did not include adequate detail concerning his patient's condition or his prognosis.
DHS assigned the application to its Medical Assistance Review Team (MART), which determined that he did not meet the aforementioned criteria and was not eligible for benefits. On October 15, 2003, DHS denied Rotondo's application and notified him of its decision. Rotondo filed a timely request for an administrative hearing, which was conducted on December 17, 2003.
After the October decision, but before the December hearing, Rotondo supplied DHS with additional materials: his hospital records and two letters from Dr. Butera, one dated October 22, 2003 (Exhibit 6) and another dated December 11, 2003. (Exhibit 7.) After the hearing, but before the hearing officer rendered his decision, Rotondo provided DHS with a Psychiatric Evaluation, which was performed in January 2004. (Exhibit 9.)
In an apparent effort to correct the deficiencies in his earlier report, Dr. Butera submitted a letter dated October 22, 2003. In that letter, Dr. Butera offered that his patient
 ". . . has undergone intensive chemotherapy and radiation therapy as of July 12, 2003. He subsequently has undergone abdominal surgery to remove the carcinoma on October 15, 2003. He will subsequently undergo several months of prolonged IV chemotherapy afterwards. Mr. Rotondo will be disabled for approximately 12 months . . ." (Exhibit 6.)
In still another effort to elaborate on his patient's condition, Dr. Butera sent a second letter to DHS on December 11, 2003. In that letter, he states that Rotondo has been prevented from doing his normal work since his July 2003 diagnosis of locally advanced rectal cancer. He concludes that Rotondo will not be "able to get back to his functional state until at least after July of 2004." Butera provides the following basis for that opinion: He states that after diagnosis, Rotondo underwent chemotherapy and radiation therapy for approximately one month; that Rotondo then underwent abdominal surgery and resection of the malignancy; that he experienced a slow recovery from surgery; that at the time of the letter, Rotondo, was then beginning a second regimen of chemotherapy which would continue until March 2004; that the chemotherapy and radiation treatments as well as the surgery had left Rotondo nauseous and fatigued; that he would "need" additional surgery in May 2004; that his recovery from the second surgery would last at least eight weeks. (Exhibit 7.)
Three witnesses testified at the administrative hearing: Rotondo; his fiancée, Lynn Hunt; and Joseph Amaral, a DHS representative from its office of Medical Review and a member of its Medical Assistance Review Team (hereinafter "MART").
At the hearing, Amaral testified from a report prepared by another member of MART, a nurse, Julie Hopkins. He read her report into the record, and Amaral's testimony appears to have been based solely on Hopkins' report. Nurse Hopkins prepared her report after she received and reviewed Dr. Butera's letters and Rotondo's hospital reports. (Tr. at 3.) Amaral testified that Rotondo was denied medical assistance because the Review Team concluded that his disability was not expected to last twelve months, which is a pre-requisite for receiving assistance based on disability. (Tr. at 2-4.) Amaral noted that the normal recovery time for Rotondo's illness is less than twelve months. Reading from Nurse Hopkins' report, he stated:
 "Mr. Rotondo was diagnosed with rectal carcinoma in July 2003. He underwent chemo and radiation treatment, preoperatively, to shrink the localized tumor. He also had a porta-cath placed for his chemotherapy infusions. He tolerated the chemotherapy well. On October 13, 2003, Mr. Rotondo underwent surgery to create an Ileostomy as well as to successful [sic] resect the rectal mass in his sigmoid colon. The pathology report indicated no metastasis. Mr. Rotondo is expected to undergo several more months of chemotherapy. Mr. Rotondo's diagnosis is severe but with treatment is not expected to last 12 months. There may be some adverse side effects from the chemotherapy but his initial course of treatment went well, according to the records review. He may also be temporarily limited in some of his functional abilities as he recovers. The presence of his temporary Ileostomy may have also initially posed some temporary limitation, post operatively, but would not be expected to continue to do so. He currently does not meet the SSI listings." (Tr. at 3-4.)
Rotondo testified that he had been working for twenty seven years. Most recently, he operated a small ice cream business until July of 2003. (Tr. at 4-5.) He stated that he stopped working because he was ill. He indicated that his job as an ice cream vendor required him to be on his feet at least eight hours a day and to lift approximately fifty pounds of ice cream. (Tr. at 5.) Rotondo further stated that he plans to return to his ice cream business as soon as he feasibly can do so. (Tr. at 6.) Rotondo's work history includes nursing, but that profession also requires him to do so some lifting and to be on his feet most of the day. (Tr. at 6.)
Rotondo described his medical condition and its effects. He stated that he had been bleeding from his rectum for several months before July 2003 when he sought medical treatment for the problem. (Tr. at 7.) By July, he also noticed that he was getting weaker and tired more easily. (Tr. at 7.) On July 11, he had a colonoscopy performed by Dr. Dupuy, who advised him on that date that he had rectal cancer. (Tr. at 7.) By then, Rotondo was bleeding so regularly that he was required to wear a pad to protect his clothing. (Tr. at 7.) His surgeon advised him that the tumor was so large that he would have to undergo a course of chemotherapy to shrink the tumor before surgery could be performed. (Tr. at 8.) Rotondo stated that he tolerated the first round of chemotherapy and radiation fairly well. Surgery was performed on October 15, 2003, and he was released from the hospital ten days later. (Tr. at 8.)
Rotondo testified that his physician recommended an additional four months of chemotherapy before the ileostomy could be surgically removed. (Tr. at 9.) Rotondo began his next course of chemotherapy and testified that his post-surgery chemotherapy treatments made him ill. (Tr. at 9.) He testified that each Wednesday he receives medical treatment, lasting between six and seven hours, which includes two hours of chemotherapy, followed by an appointment with Dr. Butera, and blood work. (Tr. at 10.) He stated that he takes medication for the nausea following each chemotherapy treatment, but he still feels weak, tired, and very nauseous, and that these side effects generally last all week until his text treatment. (Tr. at 10-11.) The medications make him sleepy, and the chemotherapy causes him to develop sores in his mouth. (Tr. at 11.) Rotondo reports a decreased appetite and significant weight loss. (Tr. at 12.) He further testified that on a daily basis, he experiences intensive pain from scar tissue and surgical staples. (Tr. at 13.) Rotondo complains that he becomes dehydrated. Rotondo testified that he is unable to perform physical activity without becoming winded, and he sleeps most of the day. (Tr. at 16-17.) Rotondo testified that his condition has also affected him emotionally. He is afraid to go anywhere and experiences feelings of despair. (Tr. at 17-18.) He says that he doesn't "see how anybody could live like this." (Tr. at 18.) Rotondo stated that he planned to see a psychiatrist for depression at the beginning of January 2004. (Tr. at 20.)
He also complains that the ileostomy is working poorly and often leaks. (Tr. at 14.) Rotondo testified that his physicians intend to reverse the ileostomy and will determine when the surgery can be performed once he has completed four months of chemotherapy followed by a four to six week period of rest. (Tr. at 18.) Rotondo testified that his physicians have advised him that he will continue to experience the effects of his condition for a period in excess of twelve months. (Tr. at 20.)
Rotondo's fiancée, Lynn Hunt, a nurse, testified that she has observed significant changes in Rotondo's overall physical state since he has become ill. (Tr. at 20.) She corroborated his testimony that he sleeps for most of the day and tires easily. (Tr. at 20-21.) She also stated that his post chemotherapy symptoms last for several days, and that he feels well no more than two days a week. (Tr. at 21.)
Subsequent to the hearing date, Rotondo made a request to keep the hearing record open for forty-five (45) days to obtain and submit additional records from Rhode Island Hospital. (Tr. at 21.) The Hearing Officer granted the request, and Rotondo submitted a psychiatric evaluation performed at Rhode Island Hospital. The psychiatrist documents Rotondo's complaints of feeling depressed and sad, and makes certain recommendations to alleviate those symptoms.
The Hearing Officer issued a written decision on February 20, 2004, upholding the prior finding that Rotondo was not eligible for Title XIX Medical Assistance. In his decision, the Hearing Officer reviewed the evidence and made certain findings of fact. He found that Rotondo was credible when he testified about the adverse side effects of his weekly chemotherapy treatment, but that those symptoms would end in March 2004 when the treatments end. He found Rotondo's emotional complaints would likely resolve once Rotondo obtained the recommended treatment. The Hearing Officer notes that Dr. Butera provides no explanation of the surgical procedure planned for May 2004. (Administrative Hearing Decision at 5-6.) The Hearing Officer writes
 ". . . so it is impossible to know if it is related to the cancer treatment and what impairments that surgery may impose. It is presumed, however, from the appellant's testimony, that this surgery would be the reversal of his ileostomy. As an ileostomy is not considered a work impairment, that surgery would be considered elective, and separate from the cancer treatments." (Administrative Hearing Decision at 5.)
The Hearing Officer concluded that
 ". . . appellant is capable of at least sedentary work. The appellant's impairments are reasonably expected to resolve upon the completion of chemotherapy, March 2004. The appellant's impairments do not meet the duration requirement of twelve months." (Administrative Hearing Decision at 5-6.)
He found that Rotondo was not disabled for the purposes of the Medical Assistance Program. Pursuant to G.L. 1956 § 42-35-15, Appellant filed a timely appeal with this Court.
 Standard of Review
Rhode Island General Laws § 42-35-15(g) governs the Superior Court's scope of review for an appeal of a final agency decision. G.L. 1956 § 42-35-15(g). The statute provides, in pertinent part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L. 1956 § 42-35-15.
Sitting as an appellate court with a limited scope of review, the Superior Court justice may not substitute his or her judgment for that of the agency with respect to the credibility of the witnesses or the weight of the evidence as to the questions of fact. Center for Behavioral Health v. Barros, 710 A.2d 680, 684
(R.I. 1998); Mine Safety Appliances Co. v. Berry,620 A.2d 1255, 1259 (R.I. 1993). This directive applies even if the court may have been inclined to arrive at different conclusions and inferences upon review of the evidence and the record. JohnstonAmbulatory Surgical Assocs. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Rhode Island Pub. Telecomm. Auth. v. Rhode IslandState Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994));Barrington Sch. Comm. v. Rhode Island State Labor RelationsBd., 608 A.2d 1126, 1138 (R.I. 1992).
Additionally, as long as "substantial evidence" exists to support the agency's determination, the Superior Court must uphold the decision. Barros, 710 A.2d at 684 ("In reviewing an administrative agency's decision, the Superior Court is limited to an examination of the certified record to determine whether the agency's decision is supported by substantial evidence");see Environmental Scientific Corp. v. Durfee, 621 A.2d 200,208 (R.I. 1993) ("The Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision"). The Rhode Island Supreme Court has defined substantial evidence as "`such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" Newport Ship Yard v. RhodeIsland Comm'n for Human Rights, 484 A.2d 893, 897 (R.I. 1984) (quoting Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981)). Thus, only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record" may the Superior Court reverse. Baker v. Department of Employment Training Bd. ofReview, 637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v.Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981)). "Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg,118 R.I. 596, 6-7. 376 A.2d 1, 6 (1977).
 Guidelines for Determining Application for Benefits
The Department of Human Services exists as an agency within the Executive Branch. G.L. 1956 § 42-12-1 et seq. Pursuant to §42-12-4 of the Rhode Island General Laws, DHS manages federally and state funded public assistance programs, one of which provides medical assistance to persons who qualify for the benefits under § 40-8-3. G.L. 1956 § 42-12-4 (providing that "The department of human services shall have supervision and management of . . . [a]ll forms of public assistance under the control of the state"); G.L. 1956 § 40-8-3 (outlining eligibility requirements for medical care benefits); see G.L. 1956 § 40-8-1
(declaration of policy). In order to receive federal funding for the Medical Assistance Program, DHS must "establish income and resource rules, regulations, and limits in accordance with title XIX of the federal Social Security Act, 42 U.S.C. § 1396
(mandating that "[t]he sums made available under this section shall be used for making payments to the States which have submitted, and had approved by the Secretary, State plans for medical assistance"); see G.L. 1956 § 40-8-13 (empowering DHS Director to create rules and regulations in conformity with42 U.S.C. § 1396 et seq.). Thus, when defining "disabled" and creating eligibility requirements, the DHS must promulgate rules that adhere to the federal definitions and guidelines as set forth in federal statutes and regulations. 42 U.S.C. § 1396 et seq.; 20 C.F.R. § 416.901-998.
Section 0352.15 of the DHS Manual outlines the policy relating to eligibility based on disability for medical assistance benefits. See Rhode Island Department of Human Services Manual § 0352.15 (hereinafter DHS Manual); Administrative Hearing Decision at 2 (outlining § 0352.15 regarding eligibility base on disability). Mirroring federal provisions, the DHS policy provides, in relevant part:
 "To be eligible for Medical Assistance because of permanent or total disability, a person must have a permanent physical or mental impairment, disease or loss, other than blindness, that substantially precludes engagement in useful occupations or appropriate activities (for children) within his/her competence.
 A physical or mental impairment is an impairment which results for anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable, clinical and laboratory diagnostic techniques." DHS Manual § 0352.15; see 42 U.S.C. § 1382c (a)(3) (2003).
For an individual to qualify as "disabled," the person must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than twelve (12) months . . ." DHS Manual § 0352.15; see42 U.S.C. § 1382c (a)(3). In addition, § 0352.15 provides that "[w]hether or not an impairment . . . constitutes a disability, as defined in Section 0352.15, is determined from all the facts of that case," with primary consideration given to the severity of the impairment, and further consideration given to the individual's age, education and work experience. DHS Manual §§ 0352.15; 0352.15.05.
To determine whether an applicant qualifies as "disabled" for the purposes of medical assistance eligibility, a Hearing Officer engages in a five-step sequential inquiry, which follows the five-step federal process enunciated in 20 C.F.R. § 416.920.Compare 20 C.F.R. § 416.920 with DHS Manual §§ 0352.15; 0352.15.05; 0352.15.15; 0352.15.20. The Hearing Officer asks:
 1. Is the claimant engaged in substantial activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920; DHS Manual §§ 0352.15; 0352.15.05; 0352.15.15; 0352.15.20; see also Bowen v. Yuckert,482 U.S. 137, 140-42 (1987) (outlining five-step process enunciated in20 C.F.R. § 416.920). Because of the sequential nature of this five-pronged analysis, a negative determination at any one of the steps (except for step three) forecloses a finding of "disabled."McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986); seeSeavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (observing that "All five steps are not applied to every applicant, as the determination may be concluded at any step along the process").
 Hearing Officer's Determination that Plaintiff Is Not Disabled
The Hearing Officer determined that Rotondo's disability will end with the cessation of his chemotherapy treatments in March 2004. He found that the future surgery to reverse the ileostomy is elective and unrelated to Rotondo's cancer treatment. If supported by the record, this finding clearly would dispose of Rotondo's claim. If the second surgery is elective, then Rotondo's impairment would end within one year of its onset. However, the record is inadequate to support this determination. Dr. Butera opined that Rotondo's disability was "expected to last 12 months or result in death" and that he needed further surgery, but he failed to provide a sufficient basis for these opinions. (Exhibits 5 and 7.)
Butera stated: "After the four months of chemotherapy, which is currently on, he will need surgery." (Emphasis added.) (Exhibit 7.) Although Dr. Butera indicates that his patient would "need" additional surgery, he does not describe the surgery or elaborate on the reasons why it is required and whether it is connected to Rotondo's cancer treatment.
When Dr. Butera submitted the Physician's Examination Report, he indicated that Rotondo's impairment would be "expected to last 12 months or result in death." (Exhibit 5.) However, in his subsequent writings, he fails to specify whether Rotondo's recovery from the second surgery would extend his period of disability beyond July 16, 2004, the one year anniversary date of the onset of his impairment. Instead, he writes in vague and ambiguous terms. Butera states that Rotondo would be disabled for "approximately 12 months" and later indicates that recovery from the second surgery would last "at least eight weeks" and that he would not return to his usual functional state until "at least after July 2004." (Exhibits 6 and 7.)
The term "approximately 12 months" might describe the time period of shortly less than twelve months, twelve months, or shortly over twelve months. The last of the three statements raises questions as to whether Butera meant that the disability would continue through the month of July or until a date following July 1, 2004. This is significant because if Rotondo's disability began on July 16, 2003, he would not be eligible for benefits unless that impairment continued uninterrupted for at least twelve months, or at least until July 16, 2004. Dr. Butera has failed to provide a clear and unambiguous opinion as to the duration of his patient's projected disability.
The Hearing Officer acknowledges Dr. Butera's statement that further surgery is planned for May 2004 after the cessation of chemotherapy, but offers that Butera "gives no explanation of the surgical procedure planned so it is impossible to know if it is related to the cancer treatment and what impairments that surgery may impose." He then assumes that Butera is referring to reversal of the ileostomy which was surgery described by Rotondo when he testified at the hearing. (See Administrative Decision at 5.)
The Hearing Officer dismisses the future surgery as elective and unrelated to Rotondo's cancer treatment although Butera describes the future surgery as needed (Exhibit 7), and Rotondo testified that the ileostomy works poorly and often leaks. (Tr. at 14.)
Nurse Hopkins found that Rotondo's ileostomy "does not preclude his ability to work." (E-mail from Julie Hopkins to Tom Piekut, Exhibit 10.) She also found that "the presence of his temporary ileostomy may have also initially posed some temporary limitation, post operatively, but would not be expected to continue to do so." (Tr. at 3-4.)
To the extent that the Hearing Officer determined the severity and duration of Rotondo's disability based upon the opinion of the non-treating nurse, his determination is flawed and in violation of statutory provisions. Although the SSI regulations indicate that the Board may consider the opinion of "other sources" in the medical field, such as "nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists," when making a determination about whether an individual has a severe impairment, a non treating nurse is not considered an acceptable medical source. 20 C.F.R. § 416.913.
In Millerick v. Fascio, 120 R.I. 9, 14-15, 384 A.2d 601, 603-04 (1978), the Rhode Island Supreme Court reversed the decision of an agency which adopted the conclusions of a non-examining doctor over the conclusions of the patient's treating physician. Because the agency's doctor did not examine the patient but rather relied solely on the report of her doctor when reaching a contrary conclusion, the Court concluded that the treating physician's doctor's report was "the only reliable, probative and substantial evidence . . ." on the issue of when the patient could return to work. Id.
According to the federal regulations, substantial weight is given to the opinions of treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."20 C.F.R. § 416.927. Furthermore, if the Board does not "give the treating source's opinion controlling weight," it is required to "give good reasons in [its] notice of determination or decision for the weight [it] give[s] [the] treating source's opinion."Id.
In the instant case, the only medical professional who made a determination regarding the nature, severity, and duration of Appellant's medical condition was Appellant's treating physician, Dr. Butera. Whereas Dr. Butera's opinions on the necessity for the second surgery and the duration of Rotondo's disability are vague and ambiguous, the Hearing Officer erred in rejecting those opinions altogether without seeking clarification from the treating physician.
DHS was faced with inadequate evidence on the issue of whether the future surgery was elective or whether it was necessary and related to the cancer treatment. Under such circumstances, DHS should have recontacted the medical source and sought clarification on the issue.
Section 416.912 of the federal regulations provides in pertinent part:
 "(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
 (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . ."
In this case, the evidence from Dr. Butera was inadequate for the Hearing Officer to determine whether Rotondo required the future surgery as part of his cancer treatment. The evidence was inadequate to determine whether the surgery is elective or in Rotondo's case, whether it is necessary. The record was inadequate to determine whether Rotondo's recovery from the second surgery would extend his impairment beyond the one year anniversary of its onset. Dr. Butera should have been recontacted to offer opinions on these issues and to provide the basis for his opinions.
The Hearing Officer further found that Rotondo was capable of sedentary work while undergoing chemotherapy. The record does not support this finding. Dr. Butera reports:
 ". . . The patient has had severe impairments, which have prevented him from doing his normal work . . . he will not be able to get back to his functional state until at least after July of 2004." (Exhibit 7.)
Neither Rotondo nor his treating physician offered any evidence that Rotondo could perform sedentary work while undergoing his second round of chemotherapy. The Hearing Officer accepted Rotondo's testimony as credible. (Administrative Hearing Decision at 5.) Based upon that testimony, which was supported by the testimony of his fiancée, Rotondo sleeps most of the day and barely recovers his strength from one treatment to the next. (Tr. at 7-17, 20-21.)
The Court finds that the Hearing Officer's determination that Rotondo is capable of sedentary work to be based on speculation and conjecture and thus arbitrary. However, this finding would constitute harmless error and does not prejudice substantial rights of the appellant unless Rotondo's second surgery was necessary rather than elective and unless his recovery from that surgery extended his disability beyond July 16, 2004. The Hearing Officer need not address the issue of whether the claimant's impairment prevents him from doing other work in the national economy unless he first finds that the applicant is eligible for disability benefits.
The Hearing Officer found that Rotondo's complaints of depression and related emotional ailments began after his October surgery and would likely resolve with recommended treatment. (See Administrative Hearing Decision at 5.) That finding clearly is supported by the record. The psychiatric complaints do not extend Rotondo's impairment beyond twelve months.
 Conclusion
After reviewing the entire record, this Court finds that the Hearing Officer's decision is not supported by the reliable, probative and substantial evidence of record and is affected by errors of law, is in violation of statutory provisions, and is arbitrary.
The record is inadequate to support DHS's finding that the future surgery to reverse the ileostomy was elective and unnecessary to Rotondo's cancer treatment. DHS should contact Dr. Butera to seek clarification on the issue of whether or not the second surgery was elective or whether it was necessary to Appellant's cancer treatment.
The record is also inadequate as to the duration of Rotondo's disability even if the second surgery were necessary to his cancer treatment. DHS should contact Dr. Butera to seek clarification of his statement that the recovery from the second surgery would extend his disability to "after July of 2004," as well as his earlier statement that "Mr. Rotondo will be disabled for approximately 12 months."
Accordingly, the Court reverses DHS's decision and remands this case for further proceedings and findings not inconsistent with this opinion.
Counsel shall submit the appropriate judgment for entry.